1   Behrooz Shariati (State Bar No. 174436)
    bshariati@jonesday.com
2   JONES DAY
    Silicon Valley Office
3   1755 Embarcadero Road
    Palo Alto, CA  94303
4   Telephone:     650-739-3939
    Facsimile:     650-739-3900
5
    Attorneys for Plaintiff
6   NORDIC NATURALS, INC.

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  **NORDIC NATURALS, INC.,**          **Case No. C-07-2385 MJJ**

13            **Plaintiff,**             **PLAINTIFF NORDIC NATURALS,
                                         INC.'S OPENING CLAIM
14        **v.**                         CONSTRUCTION BRIEF**

15  **J.R. CARLSON LABORATORIES,
    INC. and METAGENICS, INC.,**
16                                       **Date:     March 12, 2008**
            **Defendants.**              **Time:     9:00 a.m.**
17                                       **Before:  The Honorable Martin J. Jenkins**

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    BRIEF SUMMARY OF PATENTS-IN-SUIT ........................................................... 1

III.   THE LAW OF CLAIM CONSTRUCTION ............................................................... 3

  A.   Intrinsic Evidence........................................................................................................ 3

    1.   The Claims ............................................................................................................. 3

    2.   The Specification ................................................................................................... 4

    3.   Prosecution History ............................................................................................... 4

  B.   Extrinsic Evidence ...................................................................................................... 4

  C.   Reading Limitations Into the Claims Is Improper ...................................................... 4

IV.   CLAIM CONSTRUCTION ......................................................................................... 5

  A.   "Gelatin Softener".......................................................................................................... 6

  B.   "Water Soluble Flavoring" ............................................................................................ 7

    1.   "Flavoring"................................................................................................................ 8

    2.   "Water Soluble" ..................................................................................................... 10

    3.   Combined Construction ......................................................................................... 10

    4.   Defendants' Construction....................................................................................... 11

  C.   "Flavored Gelatin Capsule" ........................................................................................ 13

  D.   "Wherein said water soluble flavoring…" ................................................................. 14

    1.   "Present in" ............................................................................................................. 15

    2.   "About" ................................................................................................................... 16

    3.   Defendants' Construction....................................................................................... 16

    4.   Construction of the phrase as a whole.................................................................... 18

  E.   "Wherein said water is present…"................................................................................ 18

  F.   "Wherein the gelatin [softener] is present in a concentration in the range between 10% and 35% of said flavored gelatin capsule"........................................................................................ 19

  G.   "Palatable, Palatability" .............................................................................................. 20

  H.   "Gelswatch" ................................................................................................................. 21

  I.   "Flabored, Flavered" ................................................................................................... 21

V.    CONCLUSION .............................................................................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Cases

*Chiron Corp. v. SourceCF Inc.*, No. C-05-01938 WHA (N.D. Cal. Dec. 1, 2005) ...................... 16

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1175 (Fed. Cir. 2005) ................... 13

*Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) .... 5, 11, 12

*Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1349 (Fed. Cir. 2002) .............. 5

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)............. 4

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 372 (1996). ......................................................................................................... 3, 4

*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007) ............... 4, 5

Merck & Co., Inc. v. Teva Pharms. USA, Inc., 395 F.3d 1364 (2005), *cert. denied,* 546 U.S. 972 (2005) .................................................................................................................................. 16

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005)............................ 14

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (*en banc*), *cert. denied,* 546 U.S. 1170 (2006) ....................................................................................................................... passim

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) .................... 14

*Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ......................................... 18

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) .................................... 4

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). ....................... 3, 4, 13

1   Plaintiff Nordic Naturals, Inc. ("Nordic") hereby provides its opening claim construction

2   brief regarding the nine disputed claim terms from the two patents-in-suit, as permitted by the

3   Court's Amended Joint Case Management Statement and Order.  The two patents at issue in this

4   lawsuit are: U.S. Patent No. 6,346,231 ("the '231 Patent") (Exhibit A) and its continuation, U.S.

5   Patent No. 6,652,879 ("the '879 Patent") (Exhibit B).  The Parties have jointly agreed that similar

6   terms in the claims of both patents should be construed in similar fashion.  *See* Joint Claim

7   Construction and Prehearing Statement (Exhibit C).

8   **I.     INTRODUCTION**

9   The patents at issue in this case defy the old adage that food has to taste bad to be good for

10  you.  The technology relates to improving the taste of soft gelatin capsules that contain fish oil or

11  other unpleasant tasting compounds to encourage consumers, particularly children, to regularly

12  take beneficial natural oils, and other natural compounds, to help maintain and improve their

13  health.  The claim terms are largely used in their ordinary sense and should be interpreted

14  accordingly.  The defendants take the typical approach of attempting to add limitations to the

15  terms, either by importing them in from the disclosed embodiment, or by creating limitations that

16  do not even appear in the specification.  The more accurate constructions, and the ones best

17  supported by the intrinsic and extrinsic evidence, are the ordinary meanings of the terms as

18  proposed by Nordic, and they should be adopted.

19  **II.    BRIEF SUMMARY OF PATENTS-IN-SUIT**

20  The '231 Patent and the '879 Patent relate generally to the use of flavorings in a soft

21  gelatin capsule in order to improve the palatability and taste of the capsule.  (Exh. A, '231 Patent

22  at Col. 2:1-21.)  The specification for the '231 and '879 Patents discusses an embodiment of a

23  flavored capsule containing a fish oil dose.  (Exh. A, '231 Patent at Col. 3:11-18.)  Fish oil is used

24  as a nutritional supplement and provides numerous health benefits.  (Exh. A, '231 Patent at Col.

25  1:31-54.)  However, fish oil is also very susceptible to spoilage if it is allowed to come into

26  contact with air.  Prosecution History of Application 09/416,017 issued as '231 Patent,

27  Amendment B at 5.  (Exhibit E.)  Even when unspoiled, many people dislike the taste of fish oil.

28  (Exh. A, '231 Patent at Col. 1:26-30.)  Once spoiled, that dislike may be magnified.  Prior to the

1  inventions in the '231 and '879 patents, unflavored soft gelatin capsules were used to provide an

2  easy-to-swallow package for taking fish oil.  (Exh. A, '231 Patent at Col. 1:58-63; Prosecution

3  History of Application 09/416,017 issued as '231 Patent, Amendment A at 5.  (Exhibit D.)

4  However, in those products, the flavor of the oil may slowly seep into the capsule shell, and

5  sometimes even leaks out of the capsule shell.  This transfers the flavor and odor of fish oil to the

6  capsule shell.  Additionally, capsules have to be very carefully formulated in order to avoid

7  adverse reactions with the contents inside, such as fish oil, and to make sure that there are no

8  structural integrity issues with the capsule that could cause it to leak, or worse, spoil the

9  encapsulated dose.  (Exh. E, Amendment B at 6, 7.)

10      The claims in the '231 Patent are generally directed to a gelatin capsule used for

11  encapsulating a dose of fish oil.  The claims recite the specific ranges of concentration for various

12  components that the Inventor discovered were necessary to have a pleasant tasting capsule which

13  was able to protect the fish oil from spoiling while still tasting pleasant to the consumer.  Claim 1

14  of the '231 Patent is representative of the claim set and recites:

15          1. A fish oil capsule for palatable presentation of fish oil comprising:

16      a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener,

17      water, and a water soluble flavoring, wherein said water is present in said gelatin

18      capsule in a concentration between about 6% and about 10%, and wherein said

19      water soluble flavoring is present in a concentration between about 0.50% and

20      about 1.50% of said gelatin capsule; and

21      b) a fish oil dose, said gelatin capsule encapsulating said fish oil dose, whereby

22      said fish oil capsule is a palatable fish oil composition which promotes ingestion

23      of the fish oil.

24      The '231 Patent also describes and claims a method for manufacturing a gelatin capsule

25  with specific concentrations of ingredients.  This method is recited in Claim 16.

26      The claims in the '879 Patent are generally directed to a flavored gelatin capsule that may

27  be used to encapsulate a dose, including but not limited to fish oil, and recite specific ranges of

28  components based on discoveries made by the Inventor.  Claim 1 of the '879 Patent is

1    representative of the claim set and recites:

2        1. A flavored gelatin capsule suitable for encapsulating a dose, said flavored

3        gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble

4        flavoring,

5        wherein said water soluble flavoring is present in said flavored gelatin capsule in

6        a concentration which is in the range between about 0.25% and about 1.5% of

7        said flavored gelatin capsule,

8        and wherein said water is present in said flavored gelatin capsule in a

9        concentration in the range between about 6% and about 10% of said flavored

10       gelatin capsule,

11       whereby the palatability of a dose encapsulated in said flavored gelatin capsule is

12       improved by the water soluble flavoring.

### III.    THE LAW OF CLAIM CONSTRUCTION

14       Claim construction is purely a matter of law.  *Markman v. Westview Instruments, Inc.*, 52

15   F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 372 (1996).  Claim construction

16   should always start with the intrinsic evidence because it is "the most significant source of the

17   legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90

18   F.3d 1576, 1582 (Fed. Cir. 1996).  Intrinsic sources include the claims, specification, and the

19   prosecution history. *Id.*; *Markman*, 52 F.3d at 979.  To begin with, the court looks at: (1) the

20   words of the claims themselves; (2) the specification, of which the claims are a part; and (3) the

21   prosecution history, which provides evidence of how the PTO and the inventor understood the

22   patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (*en banc*), *cert. denied*,

23   546 U.S. 1170 (2006).

### A.    Intrinsic Evidence

#### 1.    The Claims

26       Claim construction begins with the words of the claim. *Phillips*, 415 F.3d at 1312.  "In

27   construing claims, the analytical focus must begin and remain centered on the language of the

28   claims themselves, for it is that language that the patentee chose to use to 'particularly point [...]'

out and distinctly claim [...] the subject matter which the patentee regards as his invention.'"

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

The words used in the claims are examined from the perspective of a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1313. In the absence of an express intent to impart a novel meaning to claim terms, the words are presumed to take on their ordinary and customary meanings. *Id.* at 1313, 1316; *Vitronics*, 90 F.3d at 1582.

### 2.    The Specification

The specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (citation omitted); *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007). Patent claims "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see also SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

### 3.    Prosecution History

When construing the language of a claim, the prosecution history is also considered, although "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. The prosecution history cannot "'enlarge, diminish, or vary' the limitations in the claims," but should be utilized to interpret the claims. *Markman*, 52 F.3d at 980.

### B.    Extrinsic Evidence

Extrinsic evidence is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. "[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. Extrinsic evidence, such as expert testimony, will be rejected by a court in construing patent claims, if it varies a meaning manifested by the claims, specification and prosecution history. *Markman*, 52 F.3d at 981.

### C.    Reading Limitations Into the Claims Is Improper

The Federal Circuit has consistently made clear that, "although the specifications may well

1    indicate that certain embodiments are preferred, particular embodiments appearing in a

2    specification will not be read into the claims when the claim language is broader than such

3    embodiments." *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed.

4    Cir. 1994); *see also Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1349 (Fed.

5    Cir. 2002). To the extent there were any questions about whether it is proper to incorporate

6    limitations into claims, the Federal Circuit laid them to rest in an *en banc* decision:

7       [A]lthough the specification often describes very specific embodiments of the

8       invention, we have repeatedly warned against confining the claims to those

9       embodiments. In particular, we have expressly rejected the contention that if a

10      patent describes only a single embodiment, the claims of the patent must be

11      construed as being limited to that embodiment. That is not just because section

12      112 of the Patent Act requires that the claims themselves set forth the limits of the

13      patent grant, but also because persons of ordinary skill in the art rarely would

14      confine their definitions of terms to the exact representations depicted in the

15      embodiments.

16   *Phillips*, 415 F.3d at 1323 (citations and quotations omitted); *see also MBO Labs.*, 474 F.3d at

17   1333-34.

18   **IV.    CLAIM CONSTRUCTION**

19      Nordic presents its proposed constructions for each of the disputed terms below in the

20   order they are presented in the Joint Claim Construction Statement. Nordic will also briefly

21   address defendants' proposed constructions, but reserves the right to respond in more detail in its

22   Reply to defendants' Response.

23      The '231 Patent is the parent of the '879 Patent and consequently most of the disputed

24   terms related to the '231 Patent claims will also be relevant to the construction of the '879

25   Patent's claims. With respect to the '231 Patent, currently Claims 1-4 and 16 are asserted against

26   defendants. Additionally, Nordic has asserted Claims 1-6 of the '879 Patent. Nordic will indicate

27   below the applicability of each term to the various asserted claims of the '231 and '879 Patents.

28      The parties have identified four terms that directly relate to the claim language in the '231

PLAINTIFF NORDIC NATURALS, INC.'S
OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. C-07-2385 MJJ

Patent.  These terms are: "Gelatin Softener"; "Water Soluble Flavoring"; "Palatable/Palatability"; and "Gelswatch".  Additionally, defendants have requested the construction of two phrases quoted from the '879 Patent's claims, but whose disputed constructions have similar impact on the claims of the '231 Patent.  These are, "wherein said water soluble flavoring…"; and "wherein said water is present."

The parties have also identified three additional terms that directly relate to the claim language in the '879 Patent.  These terms are, "flavored gelatin capsule"; "wherein the gelatin [softener] is present in a concentration in the range between 10% and 35% of said flavored gelatin capsule"; and "Flabored, Flavered."

A.    "Gelatin Softener"

| Claims | Claims 1 and 16 of the '231 Patent; Claims 1 and 4 of the '879 Patent |
|---|---|
| Plaintiff's Construction | "Gelatin Softener", also known in the industry as a "plasticizer", means "a compound used to make the gelatin capsule more flexible, specifically including glycerol, sorbitol and other polyols." |
| Defendants' Construction | "Gelatin softener" means a softener or plasticizer. |

The term "Gelatin Softener" is used in a similar fashion in Claims 1 and 16 of the '231 Patent and in Claims 1 and 4 of the '879 Patent.  Claim 1 of the '231 Patent states in part, "a gelatin capsule, said gelatin capsule comprising gelatin, a *gelatin softener*, water, and a water soluble flavoring…" (emphasis added).  Nordic proposes that this term be construed according to its ordinary meaning as understood by a person of skill in the art at the time of the patents' filings.

A person of ordinary skill in the art would understand a "gelatin softener" to be synonymous with a plasticizer.  On this point, defendants apparently agree.  However, assigning a different label to the concept does not sufficiently describe what constitutes a softener or a plasticizer, especially with respect to gelatin capsules.  A person of ordinary skill in the art would recognize that a softener, or plasticizer, is an additive added to a substance (for example, plastic)

to make it softer or more pliable.  *See The American Heritage College Dictionary*, Third Edition (1997) at 1047 (Exhibit F).  In the context of the asserted patents, a gelatin softener is added to a gelatin mixture in order to make it more "soft" or flexible.  It is the addition of the gelatin softener that distinguishes soft gel capsules from hard gelatin capsules.  The specification recognizes that several additives may be employed as softeners, including "glycerols, or sorbitol, or other suitable polyol or other gelatin softener known in the art."  (Exh. A, '231 Patent at Col. 3:21-23.)  The teaching in the specification comports with the general literature on the subject of the formulation of soft gelatin capsules.  *See, e.g., Pharmaceutical Dosage Forms and Drug Delivery Systems,* 190 (Ansel, Howard C., et al., eds., 7th ed., Lippincott Williams & Wilkins, 1999) (Exhibit G); *Pharmaceutical Capsules*, 203-04 (Podczeck, Fridrun and Jones, Brian E. eds., 2nd ed., Pharmaceutical Press, 2004) (Exhibit H); and *Protein-Based Films and Coatings,* 407-08 (Gennadios, Aristippos, ed., CRC Press, 2002) (Exhibit I).

Nordic's proposed construction of this term is consistent with the ordinary meaning, and is supported by both the intrinsic and extrinsic evidence.  Based on the forgoing, Nordic submits that the term "gelatin softener" be construed as synonymous with *"plasticizer"* and meaning *"a compound used to make the gelatin capsule more flexible, specifically including glycerol, sorbitol and other polyols."*

**B.    "Water Soluble Flavoring"**

| Claims | Claims 1-4 and 16 of the '231 Patent; Claims 1, 3 and 6 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | "Water soluble flavoring" means "a substance or material used to alter the natural flavor, as opposed to the sweetness, of a food item that can be easily dissolved in water." |
| **Defendants' Construction** | "Water soluble flavoring" means a substance that has the capacity to affect the sense of taste and that is susceptible to being dissolved in water and, in the context of the claims, is present throughout the gelatin capsule shell in the concentration specified by the claims. |

The term "water soluble flavoring" is present in Claims 1-4 and 16 of the '231 Patent and in Claims 1, 3, and 6 of the '879 Patent. It is a required component of the gelatin capsule in each independent claim. Claim 1 of the '231 Patent states in part, "a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a *water soluble flavoring*…" (emphasis added). Nordic proposes that this term be construed according to its ordinary meaning as understood by a person of ordinary skill in the art at the time of the patents' filings. This phrase is most easily understood by looking at its component terms, "water soluble" and "flavoring".

### 1. "Flavoring"

Nordic proposes that the term "flavoring" be construed as "a substance or material used to alter the natural flavor, as opposed to the sweetness, of a food item." This construction reflects the ordinary meaning of the term as understood by a person of ordinary skill in the art. As will be discussed in more detail below, the specification and claims provide several examples of what a flavoring is, but do not provide a specific definition for the term. However, the usage of the term in the specification and the examples make the intended use clear. A general purpose dictionary defines flavor as a "distinctive taste; savor." (Exh. F, American Heritage at 519[1].) Likewise, a flavoring is defined as "a substance that imparts flavor." *Id.* The specification and claims contemplate the addition of "flavoring" in order to modify the taste and palatability of something to be ingested. (*See e.g.,* Exh. A, '231 Patent at Col. 2:17-21, Col. 1:61-63, Claims 1, 12 and 16.) This understanding forms the first part of Nordic's proposed construction of Flavoring, as "a substance or material used to alter the natural flavor of a food item."

In addition to the ordinary meaning, Nordic also proposes a further limitation to the definition of "flavoring" in order to reflect the distinct treatment of flavoring versus sweeteners in the art. The distinction between flavoring and sweeteners has become important in this case as defendants have asserted through their invalidity contentions that flavoring includes sweeteners.[2] However, as treated in the art at the time of the invention, and as reflected in the various claims of

---

[1] Plaintiff notes that due to a typographical error in the Joint Claim Construction Statement, this citation was listed and produced as being on page 529. The correct page is provided in Exhibit F.

[2] Defendants assert that the inclusion of Mannitol, present as part of a commercially available gelatin softener, constitutes flavoring in the claimed percentages. This assertion is apparently proffered by defendants due to the fact that in addition to being a polyol softener, Mannitol is also sweet.

1    the asserted patents, flavorings are considered separately from sweeteners.  While both flavors and

2    sweeteners affect the taste of food or substances, they are classified differently.

3         The distinction between flavorings and sweeteners can be found in the patent itself.  The

4    specification provides several discussions and examples of contemplated flavorings.  Specifically,

5    the specification contemplates the use of "berry, strawberry, chocolate, cocoa, vanilla, lemon, nut,

6    almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime,

7    mint, peppermint, orange, banana, chili pepper, pepper, cinnamon, and pineapple."  (Exh. A, '231

8    Patent at Col. 2:22-27, Claims 4, 5, and 14.)  While the description in the specification and claims

9    are not intended to be an exhaustive list, each flavoring listed above imparts the flavor of a food,

10   and not just sweetness.  From a practical standpoint, it is also important to recognize that the goal

11   of the '231 Patent is to create a fish oil capsule that does not taste like fish oil, but instead has a

12   pleasant taste.  (*See e.g.,* Exh. A, '231 Patent at Col. 2:17-21, Col. 1:61-63, Claims 1, 12 and 16.)

13   Nordic submits that just sweetening a fish oil capsule would not result in a more pleasant tasting

14   product.

15        The soft gel art also generally considers flavorings to be distinct from sweeteners.

16   Examples of this distinction are evident in references, and evidence disclosed by both Nordic and

17   the defendants in this case.  As an example, one reference specifically refers to a "flavorant" as

18   being "used to impart a pleasant flavor and often odor to a pharmaceutical preparation."  (Exh. G,

19   Ansel at 89-90.)  In the same discussion, the reference refers to a "sweetening agent" as being

20   "used to impart sweetness to a preparation."[3]  (*Id.*; *see also, id.* at 93-95, 222 (providing additional

21   examples of the separate treatment of flavor and sweetness in the art.))  Defendants' own asserted

22   prior art reference *Stanley*, also draws the distinction between sweeteners and flavorings,

23   specifically noting that a "capsule shell is basically composed of gelatin, a plasticizer, and water;

24   it may contain additional ingredients such as preservatives, colorings and opacifying agents,

25   *flavorings*, *sugars*, acids, and medicaments to achieve desired effects."  Stanley, *Soft Gelatin*

26   *Capsules – Theory and Practice of Industrial Pharmacy* (1986) at 399-400 (emphasis added).

27   _____

28   [3] This reference specifically lists Mannitol under the sweetening agent listing, but not under the flavorant listing.

1    (Exhibit J.)  Another example of the distinction in the art between flavorings and sweeteners

2    comes from U.S. Patent No. 4,428,927 asserted by defendants as being prior art to the asserted

3    patents.  (Exhibit K.)  In this patent, several example formulations are given in Column 6.  In each

4    example, flavorings, imparting a taste similar to those contemplated by Nordic's construction, are

5    listed separately from sugars and sweeteners.  It is telling that when grouped together, they are

6    classified as "taste modifiers," not as "flavorings."  Additionally, in discussing Example III, the

7    '927 patent directs the reader to "add flavors to brand of fructose corn syrup and mix well."  (Exh.

8    K, '927 Patent at Col. 6:28-35.)  While this excerpt is discussing the preparation of the fill for a

9    capsule, the distinction between flavoring and sweeteners is just as applicable to the shell.

10        Based on the above discussion, Nordic proposes that the construction of "flavoring" be

11   based on both the ordinary meaning while also reflecting the understanding of a person of

12   ordinary skill in the art with respect to the distinctions between flavorings and sweeteners.

13   Nordic's proposed construction that "flavoring" means "*a substance or material used to alter the*

14   *natural flavor, as opposed to the sweetness, of a food item*" comports with the meaning the term

15   would have to a person of ordinary skill in the art at the time of the asserted patents' filings.

16                    **2.    "Water Soluble"**

17        The term "water soluble" is used to modify the term "flavoring".  The intrinsic record is

18   silent as to a specific definition of "water soluble" and thus the ordinary meaning should control.

19   The ordinary meaning of "water soluble" is "that can be dissolved, especially easily, in water."

20   (Exh. F, American Heritage at 1296.[4])  This comports with statements in the prosecution history

21   discussing an oil soluble flavoring dissolved in fish oil.  (Exh. E, Amendment B at 5.)  Thus, both

22   the intrinsic and the ordinary meaning of "soluble" support the construction water soluble

23   flavoring meaning "capable of being dissolved in water."

24                    **3.    Combined Construction**

25        Based on the foregoing, and combining the construction of "water soluble" and the

26   construction of "flavoring," Nordic proposes that the term "water soluble flavoring" be construed

27

28   _____
     [4] Plaintiff notes that due to a typographical error in the Joint Claim Construction Statement, this citation was
     listed and produced as being on page 1269.  The correct page is provided in Exhibit F.

as "*a substance or material used to alter the natural flavor, as opposed to the sweetness, of a food item that can be easily dissolved in water.*"  This construction comports with both the patents' understanding and usage of the terms, and the ordinary usage of the terms by a person of ordinary skill in the art.

### 4.    Defendants' Construction

Defendants' proposed construction of this term is improper in that it ignores certain limitations and impermissibly fabricates and imports others into the construction, in direct contravention of *Phillips*.  *See Phillips*, 415 F.3d at 1323.

Nordic begins its discussion of defendants' construction by noting that the first phrase of the construction, "'[w]ater soluble flavoring' means a substance that has the capacity to affect the sense of taste and that is susceptible to being dissolved in water," is consistent with Nordic's proposed construction.  However, defendants' proposed construction ignores the art's distinction between sweeteners and flavors.

While the first part of defendants' construction falls short of the proper amount of detail, the second phrase in defendants' proposed construction impermissibly attempts to import artificial limitations into the claims.  Defendants' construction requires that, "in the context of the claims, [the water-soluble flavoring] is present throughout the gelatin capsule shell in the concentration specified by the claims."  (Exh. C, Joint Claim Construction Statement at Exhibit A.)  This same limitation is present in many of defendants' proposed constructions.  For ease of discussion, Nordic will generally refer to this limitation, and those similar limitations present in the other constructions, as the "uniform distribution" limitation.  As will be discussed below, there is no legitimate reason for including the limitation that the flavoring be "present throughout the gelatin capsule shell…"

With respect to importing limitations from an embodiment in the specification, the Federal Circuit has provided clear guidance.  It is well established that "although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."  *Electro Medical Sys.,* 34 F.3d at 1054.  However, in the present case, the

1    additional limitation proposed by the defendants does not even appear in the specification.

2        As an initial matter, Nordic notes that while defendants' construction attempts to justify

3    itself with the phrase "in the context of the claims," no such requirement appears in any of the

4    claims, or even that the flavoring need be present throughout the gelatin capsule shell at any

5    concentration.  The specification is also silent as to any such limitations.  Indeed, defendants have

6    not provided any citations to the specification in support of this limitation in the Joint Claim

7    Construction Statement.  Instead, they rely on vague citations to the claims, and to selections from

8    the prosecution history that also fail to describe this limitation.

9        At best, defendants may attempt to infer this limitation as being a natural result of the

10   specific method of manufacturing described in connection with a preferred embodiment of the

11   invention as described in the specification and claimed in Claim 16 of the '231 Patent.  However,

12   there is no evidence that the method of manufacture disclosed in the specification of the patent

13   leads to a uniform distribution of the flavoring.  However, for the sake of a complete argument,

14   Nordic will address this issue.

15       As noted above, the Federal Circuit specifically rejects attempts at importing a limitation

16   of a specific embodiment into a claim.  *See e.g., Electro Medical Sys.,* 34 F.3d at 1054; *Phillips*,

17   415 F.3d at 1323.  With respect to this term in Claim 16, the construction proposed by defendants

18   is already unworkable and impermissible.  Nevertheless, the defendants have not stopped with

19   construing Claim 16, and instead seek to impose this uniform distribution limitation on all claims.

20   In the present case, every claim at issue, except for Claim 16, is an "apparatus" claim, and is not

21   dependent in any way on the method of manufacture described in the specification.  With respect

22   to the asserted claims, all that is required is that the proper materials are present in the proper

23   proportions; there is no requirement that they be uniformly mixed or present throughout the

24   capsule.[5]  The capsule shell may indeed be uniformly formed, but may just as easily be comprised

25   of layers or sections of materials, provided that the proportions and percentages in the claims are

26   met.  Further, if defendants' limitation is truly inherent in the method of Claim 16, then it will

27

28       [5] From a practical standpoint, it would be very difficult, if not impossible, in a real-world manufacturing
     facility, to guarantee that the materials were distributed as required by defendants.

1    manifest itself in the totality of Claim 16 without subjecting the other claims to the same

2    limitation.

3         From a practical standpoint, Nordic notes that the gelatin matrix in a soft gelatin capsule is

4    formed such that the additives, such as a water-soluble flavoring, can migrate, or move around,

5    within the shell depending on various internal and external conditions.  (*Se,e e.g.,* Exh. D,

6    Amendment A at 5; Exh. E, Amendment B at 7.[6])  Thus any claim limitation requiring a uniform

7    distribution, or indeed, any particular distribution within the capsule shell would exclude the

8    preferred embodiment disclosed in the patent which does not include this limitation.  In addition

9    to being unsupported by the intrinsic evidence, such a limitation is almost always improper  *See*

10   *Vitronics*, 90 F.3d at 1583; *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1175

11   (Fed. Cir. 2005).

12        Defendants' construction should be rejected and the term "water soluble flavoring" should

13   be construed consistent with Nordic's proposed construction as "*a substance or material used to*

14   *alter the natural flavor, as opposed to the sweetness, of a food item, that can be easily dissolved in*

15   *water.*"

16        **C.    "Flavored Gelatin Capsule"**

| Claims | Claims 1-6 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | "Flavored gelatin capsule" means "a capsule shell comprising gelatin, or equivalent thereof, whose natural taste has been altered by a Flavoring," as Flavoring is defined above. |
| **Defendants' Construction** | "Flavored gelatin capsule" means a gelatin capsule in which flavoring is present throughout the gelatin capsule shell in the concentration specified by the claims. |

23        This claim term is unique to the '879 Patent, and is introduced in the preamble to provide a

24   label for the "apparatus".  Nordic asserts that this phrase is used simply as a label and should be

25   afforded its ordinary meaning modified as needed by the Court's construction of "water soluble

---

[6] The Amendments both discusses the effect of too little water in a flavored capsule, and recognizes that the migration of materials in a system with too little water may cause an unpleasant taste.  Even in the claimed invention, migration will still happen, albeit without causing an unpleasant taste.

flavoring."  The Federal Circuit has held that when "the body of the claim fully and intrinsically

sets forth the complete invention, including all of its limitations, and the preamble offers no

distinct definition of any of the claimed invention's limitations, but rather merely states, for

example, the purpose or intended use of the invention, then the preamble is of no significance to

claim construction because it cannot be said to constitute or explain a claim limitation." *Pitney*

*Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (citations omitted).

*See also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005).  Here, the

body of the claim already recites gelatin and a water soluble flavoring.  Thus there is nothing

uniquely recited by the term "flavored gelatin capsule" that requires a separate construction.

Defendants' proposed construction once again includes the uniform distribution limitation

and attempts to import the limitation of a uniform distribution into the construction of this term.

As discussed above, this type of construction is impermissible under *Phillips.  Phillips*, 415 F.3d

at 1323.  Defendants' proposal is even more untenable considering the fact that the term is

introduced as part of the preamble and is used merely as a label for the apparatus.  *See Pitney*

*Bowes*, 182 F.3d at 1305.

Based on the foregoing, Nordic proposes that "flavored gelatin capsule" be given its

ordinary meaning as modified by the Court's construction of "water soluble flavoring", and be

construed as, a "*capsule shell comprising gelatin, or equivalent thereof, whose natural taste has*

*been altered by a Flavoring*" as Flavoring is construed by the Court above with respect to "water

soluble flavoring."

   **D.      "Wherein said water soluble flavoring…"**

| Claims | Claims 1 and 2 of the '231 Patent, and Claim 1 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | Example from Claim 1 of the '879 Patent:  "Wherein said water soluble flavoring is present as part of said flavored gelatin capsule in a concentration which is in the range between .25% and 1.5% of said flavored gelatin capsule, within acceptable manufacturing tolerances. |
| **Defendants' Construction** | Example from Claim 1 of the '879 Patent:  "Wherein said water soluble flavoring is present in said flavored gelatin capsule in a concentration which is in the range between about 0.25% and about 1.5% of said flavored gelatin capsule" means "a flavoring substance that is soluble in water and is present throughout the gelatin capsule shell in the |

| | concentration of 0.25% to 1.5%." |
|---|---|

As originally listed in the Joint Claim Construction Statement, this claim term phrase is only present in Claim 1 of the '879 Patent.  However, Nordic believes that all such similar phrases should be construed consistently.  Claim 1 of the '231 Patent recites in part, "wherein said water soluble flavoring is present in a concentration between about 0.50% and about 1.50% of said gelatin capsule."  Claim 2 of the '231 Patent recites "wherein said water soluble flavoring is present in a concentration between about 1.0% of said gelatin capsule."  Claim 1 of the '879 Patent recites in part, "wherein said water soluble flavoring is present in said flavored gelatin capsule in a concentration which is in the range between about 0.25% and about 1.5% of said flavored gelatin capsule."  With the exception of the addition of the term "flavored" in Claim 1 of the '879 Patent, each of these phrases uses the same phrase structure and terms, albeit with different claimed ranges and additives.

In each applicable claim, this phrase, and the other similarly constructed phrases for water and for gelatin softener, exists merely to indicate what percentage the component comprises the capsule.  Nordic believes that this phrase is clear on its face and should be construed according to its ordinary meaning.  To the extent the Court determines that construction is needed, Nordic will focus on two particular terms within the phrase: "present in" and "about".  To the extent the Court believes that the term "flavored gelatin capsule" also requires construction with respect to the '879 Patent, the construction of this phrase with respect to Claim 1 of the '879 Patent should be modified accordingly.

### 1.    "Present  in"

Nordic proposes that "present in" be construed according to its ordinary meaning, as "present as part of the capsule shell, as opposed to the fill."[7]  This is consistent with the ordinary reading of the claims' recitations that the capsule comprise, in part, the water soluble flavoring.

---

[7] Nordic has modified this construction from its originally proposed form submitted in the Joint Statement after discovering a difference in interpretation as to what "capsule" meant to each party.  The use of "capsule shell" is technically not needed based on the use of the term "capsule" by the asserted patents, but is provided herein to avoid any potential confusion. (*See e.g.,* Exh. E, Amendment B at 5)

PLAINTIFF NORDIC NATURALS, INC.'S
OPENING CLAIM CONSTRUCTION BRIEF
CASE NO. C-07-2385 MJJ

No further limitations are needed or are supported by the intrinsic evidence as to the nature of how the capsule comprises the water soluble flavoring.

### 2.    "About"

Nordic proposes that the term "about" be construed according to its ordinary meaning.  In its common usage, "about" is defined as "approximately; nearly."  (Exh. F, American Heritage at 4.) Nordic believes that "approximately" is the best construction of the term as used in the claims. The Federal Circuit and the Northern District of California have ruled that "about" means "approximately" in similar situations.  *See Chiron Corp. v. SourceCF Inc*., No. C-05-01938 WHA, WL 3261263 (N.D. Cal. Dec. 1, 2005) (noting that "[n]owhere did the inventor expressly define 'about 60 mg/ml' to mean  'at least 60 mg/ml' or 'exactly 60 mg/ml' or anything other than the ordinary and customary meaning as understood by a person of ordinary skill in the art.... Accordingly, this order finds that the proper construction of this phrase is 'approximately 60 to approximately 200 mg/ml.'); Merck & Co., Inc. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1369-70 (Fed. Cir.), *cert. denied,* 546 U.S. 972 (2005) (holding that the word "about" should be given its ordinary meaning of "approximately").

However, for ease of application, Nordic has endeavored to place some reasonable limits on how close "approximately" may be.  Nordic has proposed construing "about" as "to within acceptable manufacturing tolerances."  Nordic believes that this definition allows for the vagaries and imprecision involved in the manufacturing process while still providing certainty as to the scope of the claims.  The exact limits of manufacturing tolerances is a factual question and may be left to the ultimate trier of fact.

### 3.    Defendants' Construction

While defendants have stated that they feel the phrase must be construed as a whole, and not in its constituent parts, it is apparent from their construction that they contend "present in" should be construed as, "present throughout the gelatin capsule shell."  As discussed above with respect to "water soluble flavoring", this construction impermissibly imports limitations, tenuously linked at best to one specific embodiment, into the claims.  *See supra*, at §IV.B.4; *Phillips*, 415 F.3d at 1323.  Defendant's construction places too great an import on the word "in".

1    Nordic's construction reflects the ordinary meaning of "present in" as applied to the phrase as a

2    whole.  Alternatively, it may be that defendants' addition of the uniform distribution limitation is

3    an artifact of the presence of the term "flavored gelatin capsule," as this would match their

4    proposed construction for that term.  However, if this is the case, then the uniform distribution

5    limitation should be stricken from the constructions associated with the '231 Patent claims.

6    Additionally, defendants' explicit incorporation of their construction for "flavored gelatin

7    capsule" into the "wherein" clause associated with the '879 Patent should also be avoided, as the

8    Court's construction of "flavored gelatin capsule" can be applied as needed.

9         Defendants' reluctance to construe the term "about" separately from the rest of the phrase

10   is also telling.  An analysis of defendants' proposed construction shows that there is no indication

11   that the term "about" influenced the construction in the least.  The '879 Patent contains two types

12   of "wherein" percentage clauses.  Claim 1 of the '879 Patent recites in part, "wherein said water

13   soluble flavoring is present in said flavored gelatin capsule in a concentration which is in the

14   range between *about* 0.25% and *about* 1.5% of said flavored gelatin capsule, and wherein said

15   water is present in said flavored gelatin capsule in a concentration in the range between *about* 6%

16   and *about* 10% of said flavored gelatin capsule" (emphasis added). Claim 4 of the '879 Patent

17   recites, "[t]he flavored gelatin capsule of claim 1 wherein the gelatin sofener [sic] is present in a

18   concentration in the range between 10% and 35% of said flavored gelatin capsule."  The clauses

19   are similar in structure, with the notable exception that Claim 4 does not include the word

20   "about".  Defendants' proposed construction for exemplary Claim 1 of the '879 Patent (the clause

21   including "about") is "a flavoring substance that is soluble in water and is present throughout the

22   gelatin capsule shell in the concentration of 0.25% to 1.5%."  Defendants' proposed construction

23   for Claim 4 of the '879 Patent (the clause without "about") is, "wherein the gelatin softener, also

24   called a plasticizer, is included throughout the gelatin capsule shell in the concentration of 10% to

25   35%."  A comparison of defendants' proposed constructions for each citation shows the exact

26   same phrasing for both with respect to the concentrations.  In effect, the Defendants' proposed

27   construction writes out the word "about" from the claim altogether.  The Inventor's affirmative

28   use of the term "about" in only some of the claims should be given proper effect, as noted in the

1
2
3
4
5

Federal Circuit's holdings on the doctrine of claim differentiation. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005) (citations omitted). (noting that "[t]he doctrine of claim differentiation stems from 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'").

6

### 4.    Construction of the phrase as a whole

7
8
9
10
11
12
13
14

As discussed above, Nordic believes that this term can be easily understood based on its ordinary meaning. Defendants have instead attempted to impermissibly import additional limitations in the term "present in" while completely ignoring the term "about". Based on the foregoing, Nordic's proposed construction for "wherein said water soluble flavoring…" as meaning, "*wherein said water soluble flavoring is present as part of said [flavored] gelatin capsule shell in a concentration which is in the range between ___ and ____ of said [flavored] gelatin capsule, within acceptable manufacturing tolerances,*" should be adopted by the Court.

15
16

### E.    "Wherein said water is present…"

17
18
19
20
21
22

| Claims | Claim 1 of the '231 Patent, and Claim 1 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | Example from Claim 1 of the '879 Patent: "Wherein said water is present as part of said flavored gelatin capsule in a concentration in the range between 6% and 10% of said flavored gelatin capsule, within acceptable manufacturing tolerances." |
| **Defendants' Construction** | Example from Claim 1 of the '879 Patent: "Wherein said water is present in said flavored gelatin capsule in a concentration in the range between about 6% and about 10% of said flavored gelatin capsule" means "wherein water is included throughout the gelatin capsule shell in the concentration from 6% to 10%." |

23
24
25
26
27
28

Similar to the "wherein said water soluble flavoring" phrase construed above, the phrase "wherein said water is present in said flavored gelatin capsule in a concentration in the range between about 6% and about 10% of said flavored gelatin capsule" as listed in the Joint Construction Statement is from Claim 1 of the '879 Patent. Claim 1 of the '231 Patent contains a similar phrase, "wherein said water is present in said gelatin capsule in a concentration between

1   about 6% and about 10%..."   Nordic proposes to construe both terms similarly, with any

2   difference arising from the '879 Patent's use of "flavored gelatin capsule" resolved by the Court's

3   construction of that term above.

4        Nordic believes that the issues and concepts considered when construing the

5   "wherein…flavoring" clause above are equally applicable here.  Thus, Nordic proposes using the

6   same constructions for "present in" and "about," as discussed with respect to the flavoring clause.

7   Likewise, defendants run afoul of the same problems they did with respect to the flavoring clause,

8   namely impermissibly importing the uniform distribution limitation and ignoring the term

9   "about," and/or unnecessarily incorporating their proposed construction of "flavored gelatin

10  capsule" into this term's construction.

11       Based on the foregoing, including the discussion related to the flavoring clause in §IV.D

12  *supra*, Nordic submits that its proposed construction of "wherein said water is present…" as

13  meaning, "*wherein said water is present as part of said [flavored] gelatin capsule shell in a*

14  *concentration in the range between 6% and 10% of said [flavored] gelatin capsule, within*

15  *acceptable manufacturing tolerances,*" should be adopted by the Court.

16       **F.    "Wherein the gelatin [softener] is present in a concentration in the range**
         **between 10% and 35% of said flavored gelatin capsule"**

17

| Claims | Claim 4 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | "Wherein the gelatin softener is present as part of said flavored gelatin capsule in a concentration in the range between 10% and 35% of said flavored gelatin capsule." |
| **Defendants' Construction** | "Wherein the gelatin sofener is present in a concentration in the range between 10% and 35% of said flavored gelatin capsule" means "wherein the gelatin softener, also called a plasticizer, is included throughout the gelatin capsule shell in the concentration of 10% to 35%." |

24       Unlike similar phrases discussed above, this phrase is present only in Claim 4 of the '879

25  Patent.  However, except for the notable absence of the term "about," it shares a similar structure

26  with the other phrases and Nordic proposes that it should construed similarly.  Similar to the

27  phrases construed above, Defendants' construction suffers from the impermissible importation of

28  limitations loosely associated with a single embodiment in the patent, and/or unnecessarily

1  incorporates its proposed construction of the term "flavored gelatin capsule."

2       With respect to the term "softener"[8], defendants' construction seeks to avoid the Court's

3  construction of the term, and instead seeks a second bite at the apple by integrating their definition

4  of "softener" directly into the construction of the present clause.  Nordic contends that the

5  question of the construction of "softener" is already in front of the Court and its determination

6  with respect to "gelatin softener" should also hold for this phrase.  Based on the foregoing, Nordic

7  proposes the phrase "wherein the gelatin softener…" be construed as "*wherein the gelatin softener*

8  *is present as part of said flavored gelatin capsule shell in a concentration in the range between*

9  *10% and 35% of said flavored gelatin capsule*".

10      **G.    "Palatable, Palatability"**

| Claims | Claims 1 and 16 of the '231 Patent, Claim 1 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | "Palatable" means "having a pleasant or acceptable taste." "Palatability" is "the property of being palatable." |
| **Defendants' Construction** | Palatability" means the quality of acceptability to the taste. "Palatable" means the quality of acceptability to the taste. |

17      The constructions of the parties are very similar.  Each requires that the taste be at least

18 acceptable.  However, Nordic proposes that the taste be more than merely acceptable, it should be

19 pleasant as well.

20      One of the main goals of the invention is to provide a soft gelatin capsule that is pleasant

21 to the taste in order to encourage people to consume the capsule and its contents. (Exh. A, '231

22 Patent at Col. 1:12-30.)  The specific example given in the specification is that of fish oil capsules.

23 As noted in the specification, "the taste of many medicinal and nutritive components can be quite

24 distinctive and potentially unpleasant." (Exh. A, '231 Patent at Col. 1 12-13.)  "As a consequence

25 of [a] Unites States market aversion to the taste of fish oils, many residents of the United States

26 are less willing to ingest fish oils and will therefore not benefit from the nutritional and medicinal

27

28      _____
     [8] The parties jointly agree that "sofener" as listed in the claim is a typographical error and should be "softener."

1  qualities of fish oils." (Exh. A, '231 Patent at Col. 1:25-30.) The patent provides a solution to

2  this problem, teaching that "the flavoring of the capsule improves the taste and palatability of the

3  capsule and will subjectively improve the taste of the gelatin and a dose or contents contained

4  within the flavored gelatin capsule to individual consumers or patients." (Exh. A, '231 Patent at

5  Col. 2:17-21.) Thus, the goal of the patent is not to merely make the capsule "acceptable," but it

6  should be pleasant to the taste, and "whereby the consumer is greatly encouraged to ingest the

7  composition…" (Exh. A, '231 Patent at Col. 4:4-5.) In the prosecution of the patent, the Inventor

8  notes that a reference cited by the Examiner "results in a distorted unpleasant taste." (Exh. D,

9  Amendment A at 5.) Thus, Nordic's proposed construction comports with the description

10  provided in the specification, prosecution history and with the general goals of the invention of

11  encouraging the consumption of the flavored capsules. Nordic respectfully submits that the Court

12  should adopt its proposed constructions for the terms, specifically holding that the term

13  "palatable" means "*having a pleasant or acceptable taste*," and "palatability" means "*the property*

14  *of being palatable.*"

15      **H.    "Gelswatch"**

16      Plaintiff is willing to agree to the use of Defendants' construction for "gelswatch" in an

17  effort to reduce the burden on the Court and to keep the parties focused on the more substantive

18  claim construction disputes. Thus, the Nordic proposes the term "Gelswatch" be construed as "*a*

19  *mixture of gelatin, gelatin softener, water and any additional components of the gelatin capsule*

20  *shell.*"

21      **I.    "Flabored, Flavered"**

| Claims | Claims 1 and 3 of the '879 Patent |
|---|---|
| **Plaintiff's Construction** | "Flavored" means "Having one's natural taste altered by a Flavor", as Flavoring is defined above. |
| **Defendants' Construction** | The term "flabored" is a misspelling of "flavored" which has its ordinary meaning. The term "flavered" is a misspelling of "flavored" which has its ordinary meaning. |

The parties agree that these terms as they appear in Claims 1 and 3 of the '879 Patent are misspellings of the term "flavored." (Exh. C, Joint Claim Construction Statement at 2.) The parties however, do not agree as to their proper construction. Nordic recognizes that the parties have already requested a construction of the term "water soluble flavoring." With respect to the term "flavored", Nordic proposes that it be construed in view of the Court's construction of "water soluble flavoring". Defendants, instead, propose that the term be construed to have its "ordinary" meaning, but do not provide such meaning, leaving as a question whether they intended the meaning to align itself with, or to purposefully avoid, the Court's construction of "water soluble flavoring". To alleviate this confusion, Nordic submits that the Court should adopt Nordic's proposed construction that "flavored" means "*having one's natural taste altered by a Flavor,*" as flavoring is defined above with respect to water soluble flavoring.

## V.    CONCLUSION

For many of disputed claim terms above, defendants' proposed constructions fail to recognize the understanding that a person of ordinary skill in the art would have with respect to those terms. Additionally, for many of the disputed claim terms, defendants' proposed constructions impermissibly imports limitations into the claims that are not explicitly found in the intrinsic record. With other constructions, defendants' fail to give meaning to each word in the disputed claim phrase. For all of the foregoing reasons, the Court should adopt each of Nordic's proposed constructions.

Dated: February 4, 2008                          Respectfully submitted,

                                                 JONES DAY


                                                 By:  _____/s/ Behrooz Shariati_____
                                                 Counsel for Plaintiff
                                                 NORDIC NATURALS, INC.


SVI-54364