# EXHIBIT L

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 3261263 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Chiron Corp. v. SourceCF, Inc.
N.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
CHIRON CORPORATION, Plaintiff,
v.
SOURCECF INC., Sourcecf Clinical Research & Development, L.L.C., Maxor National Pharmacy Services Corporation d/b/a IV Solutions, Foundation Care L.L.C., and Pharmaceutical Specialties, Inc., Defendant.
No. C 05-01938 WHA.

Dec. 1, 2005.

Benjamin C. Hsing, Gerald Sobel, Kimberly Branch Koch, Kaye Scholer LLP, New York, NY, Lucas William Huizar, Mark Dean Petersen, Farella Braun & Martel LLP, San Francisco, CA, for Plaintiff.
Richard Proctor Doyle, Jr., Janssen Doyle LLP, Walnut Creek, CA, for Defendant.

ORDER GRANTING PERMANENT INJUNCTION

ALSUP, J.

INTRODUCTION

*1 In this patent case, the parties appear to agree that at least some products previously made or sold by defendants were infringing the patent-in-suit. Apparently hoping to avoid the costs of litigation, they have represented that the only remaining dispute is the proper scope of injunctive relief and have filed cross-motions on this issue. This order GRANTS a limited permanent injunction. In addition, the phrase "about 60 to about 200 mg/ml" is construed to mean "approximately 60 to approximately 200 mg/ml."

STATEMENT

Plaintiff Chiron Corporation is the owner of United States Patent No. 6,890,907 ("the '907 patent").The '907 patent discloses a method of treating lung infections, namely an inhaled tobramycin formulation used with a high efficiency nebulizer, particularly for patients suffering from cystic fibrosis ("CF").[FN*] Defendants are alleged to infringe, induce infringement of and/or contributorily infringe one or more claims of the '907 patent by (1) selling a product called the eFlow® inhaler and (2) instructing doctors and patients how to use it. Defendants challenge the validity of the '907 patent, but prefer not to litigate. Defendants' answers, filed on September 28, 2005, raised no counterclaims of patent invalidity; a reexamination proceeding before the United States Patent and Trademark Office, however, is pending.

> FN* Tobramycin is an antibiotic. A nebulizer is a medical device used to turn liquid solutions into a fine mist for inhalation.

An earlier complaint, filed on October 5, 2004, accused defendants of unfair competition and false advertising (Compl.¶ 2).*That* lawsuit was settled to the mutual satisfaction of the parties *(id.* ¶¶ 3-4). In *this* action, the parties have been engaged in ongoing settlement discussions. As a result, defendants have agreed that certain tobramycin formulations infringe '907 patent and have voluntarily stopped using dosages between 60 to 200 mg/ml. They now move for the entry of the following permanent injunction.

Defendants are preliminarily and permanently enjoined from:
(1) Making, using, offering for sale, or selling in the United States a compounded tobramycin formulation specifically for use in the eFlow Electronic Inhaler by PARI or any other inhalation device which is prescribed to operate within the parameters set forth in the claims of the patent.
(2) inducing infringement of, or contributorily infringing the '907 patent by promoting the prescription of a compounded tobramycin formulation specifically for use in the eFlow Electronic Inhaler by PARI or any other inhalation device which is to be prescribed to operate within the parameters set forth in the claims of the patent.

Plaintiff also moves for entry of judgment and a permanent injunction, but proposes the following language instead:Defendants are infringing, inducing infringement of and/or contributorily infringing U.S. Patent No. 6,890,907 ("the '907 patent").
Defendants are preliminarily and permanently enjoined from infringing, inducing infringement of, or contributorily infringing the '907 patent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2005 WL 3261263 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*2** Defendants are preliminarily and permanently enjoined from:

(1) Inducing infringement of or contributorily infringing the '907 patent by making, using, offering for sale, selling, or promoting in the United States or importing into the United States any tobramycin formulation in an aqueous solution with a concentration of about 60 to about 200 mg/ml of tobramycin in a physiologically acceptable carrier in a nebulized unit dose volume of 4.0 ml or less for use with the eFlow Electronic Inhaler by PARI or any other inhalation device which, like the eFlow Electronic Inhaler by PARI, has a rate of aerosol output of not less than about 4 <<mu>>l/sec, delivers said tobramycin formulation with a duration of nebulization of less than about 10 minutes, releases at least about 75% of the loaded dose, and produces aerosol particles having particle sizes between about 1 <<mu>>m to about 5 <<mu>>m;

(2) Inducing infringement of the '907 patent by using, offering for sale, selling, or promoting in the United States or importing into the United States the eFlow Electronic Inhaler by PARI or any other inhalation device which, like the eFlow Electronic Inhaler by PARI, has a rate of aerosol output of not less than about 4 <<mu>>l/sec, delivers said tobramycin formulation with a duration of nebulization of less than about 10 minutes, releases at least about 75% of the loaded dose, and produces aerosol particles having particle sizes between about 1 <<mu>>m to about 5 <<mu>>m for use with tobramycin formulations in an aqueous solution at concentrations of about 60 to about 200 mg/ml of tobramycin in a physiologically acceptable carrier in nebulized unit dose volumes of 4.0 ml or less;

and

(3) Instructing doctors and patients how to administer tobramycin formulations in an aqueous solution at concentrations of about 60 to about 200 mg/ml of tobramycin in a physiologically acceptable carrier in nebulized unit dose volumes of 4.0 ml or less using the eFlow Electronic Inhaler by PARI or any other inhalation device which, like the eFlow Electronic Inhaler by PARI, has a rate of aerosol output of not less than about 4 <<mu>>l/sec, delivers said tobramycin formulation with a duration of nebulization of less than about 10 minutes, releases at least about 75% of the loaded dose, and produces aerosol particles having particle sizes between about 1 <<mu>>m to about 5 <<mu>>m.

As indicated below, neither proposal is adopted.

ANALYSIS

There is apparently no dispute that at least some products previously made or sold by defendants used tobramycin formulations within the range of 60 to 200 mg/ml. It is conceded that plaintiff is entitled to permanent injunctive relief with respect to those products. Yet, while the parties have agreed that defendants should be permanently enjoined from infringing the '907 patent, they dispute the precise scope of the claim language. This order thus rejects the proposed language proffered by the parties. Instead, a permanent injunction limited to the precise range of 60 to 200 mg/ml is GRANTED.

**\*3** The sole remaining issue to be decided by the Court is presented as one of claim construction. Claim 1 of the '907 patent is reproduced below, with the disputed phrase italicized.

1. A method of treatment of a patient having an endo-bronchial infection comprising administering to the patient for inhalation a nebulized unit dose of 4.0 ml or less of an aqueous solution comprising from *about 60 to about 200 mg/ml* of tobramycin in a physiologically acceptable carrier for a duration of nebulization less than about 10 minutes, using an inhalation device having a rate of aerosol output of not less than about 4<<mu>>l/sec, that releases at least about 75% of the loaded dose, and that produces aerosol particles having particle sizes between about 1 <<mu>>m to about 5<<mu>>m.

Specifically, defendants ask the Court to find that an aqueous solution of 50 mg/ml of tobramycin in a physiologically acceptable carrier would be excluded from the range "about 60 to about 200 mg/ml."In the alternative, it argues that if plaintiff cannot precisely determine the range of tobramycin concentrations that would infringe, then the '907 patent should be deemed invalid as indefinite.

Plaintiff contends that "about 60 to about 200 mg/ml" should be construed as "approximately 60 to approximately 200 mg/ml."Plaintiff asserts that any further definition of the outer limits of this range would be inappropriate because it would be up to a jury to decide the factual issue of whether 50 mg/ml (or any other amount) reads on the phrase "about 60 to about 200 mg/ml" either literally or under the doctrine of equivalents. It also argues that defendants do not currently make or sell any product containing 50

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02385-PJH     Document 36-14     Filed 02/04/2008     Page 4 of 5

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2005 WL 3261263 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

mg/ml of tobramycin and improperly seek an advisory opinion.

Although the issue has been framed as a pure question of claim construction, defendants essentially seek a declaratory-judgment that a 50 mg/ml tobramycin solution would not infringe the '907 patent. It is true that without an actual controversy, the Court would lack subject-matter jurisdiction to decide that question. 28 U .S.C. 2201. Yet, despite plaintiff's assertions to the contrary, there *is* an actual controversy in this case because at least one defendant has sold a 50 mg/ml dosage (Birdsong Decl. ¶ 12).

As for the proper construction of "about 60 to about 200 mg/ml," defendants argue that this range excludes any concentration less than 60 mg/ml. In short, they seek to limit this phrase to mean "between *exactly* 60 and about 200 mg/ml."That interpretation is rejected. Defendants attempt to improperly read in limitations from the patentee's examples in the specification. The arguments about what was or was not described as the "minimal yet efficacious" concentration of tobramycin in the prior art are also unpersuasive, at least for claim construction purposes, because "minimal yet efficacious" does not appear in the claims.

Nowhere did the inventor expressly define "about 60 mg/ml" to mean "at least 60 mg/ml" or "exactly 60 mg/ml" or anything other than the ordinary and customary meaning as understood by a person of ordinary skill in the art. Here, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."*Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed.Cir.2005) (en banc). The Federal Circuit has held that the word "about" should be given its ordinary meaning of "approximately." *Merck & Co v. Teva Pharms. USA,* 395 F.3d 1364, 1369 (Fed.Cir.2005). Accordingly, this order finds that the proper construction of this phrase is "approximately 60 to approximately 200 mg/ml."

**\*4** The remaining dispute, however, is *not* one of claim construction. It is a question of *infringement* that remains to be decided another day. As plaintiff correctly points out, even if a 50 mg/ml tobramycin formulation does not literally infringe, a jury could still find defendants liable under a doctrine of equivalents theory, (assuming that no prosecution history estoppel applies). In other words, reasonable jurors could find that a person of ordinary skill in the art would know that a lower dosage performs substantially the same function, in substantially the same way, to reach substantially the same result. *Compare Hilton Davis Chem. Co. v. Warner-Jenkinson Co., Inc.,* 114 F.3d 1161, 1164 (Fed.Cir.1997) (affirming the jury's finding "that a pH of 5.0 is equivalent to a pH of 'approximately 6.0' in the context of the claimed process"). As such, this order declines to rule as a matter of law that using a 50 mg/ml tobramycin solution with the eFlow® inhaler would not infringe the '907 patent.

CONCLUSION

With respect to concentrations of tobramycin within the range of exactly 60 to exactly 200 mg/ml, the parties agree that such products infringe the '907 patent. The cross-motions for permanent injunctive relief are GRANTED as to those dosages:

Defendants are preliminarily and permanently enjoined from making, using, offering for sale, selling, promoting or importing into the United States any tobramycin formulation in an aqueous solution comprising from 60 to 200 mg/ml of tobramycin in a physiologically acceptable carrier in a nebulized unit dose volume of 4.0 ml or less for use in the eFlow® Electronic Inhaler by PARI or a similar inhalation device having a rate of aerosol output of not less than about 4<<mu>>l/sec, releases at least about 75% of the loaded dose, and produces aerosol particles having particle sizes between about 1 <<mu>>m to about 5<<mu>>, for a duration of nebulization of less than about 10 minutes. Defendants are further enjoined from instructing doctors or patients in such use.

The Court retains jurisdiction for three years to enforce this injunction or to modify it as necessary, depending on the outcome of the pending reexamination proceedings.

This order further construes "about 60 to about 200 mg/ml" to mean "approximately 60 to approximately 200 mg/ml."Because whether any particular concentration of tobramycin outside the range of exactly 60 to exactly 200 mg/ml, (such as 50 mg/ml), would infringe the '907 patent is a question of fact that remains to be decided, such dosages are *not* included in the permanent injunction granted by this order. Rather, this issue shall be reserved for further adjudication at trial.

IT IS SO ORDERED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                               Page 4
Not Reported in F.Supp.2d, 2005 WL 3261263 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

N.D.Cal.,2005.
Chiron Corp. v. SourceCF, Inc.
Not Reported in F.Supp.2d, 2005 WL 3261263 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.