# Exhibit L
# to Baker Declaration In Support of Defendants' Claim Construction Brief

MPK 138108-1.062114.0123
2/4/08



the United States Patent and Trademark Office

RECEIVED
APR 11 2001
TECH CENTER 1600/2900

Applicant: Joar Opheim
Serial Number: 09/416017
Filed: Oct. 6, 1999
Title: Flavored Gelatin Capsule and Method of Manufacture
Examiner: Isis Ghali
Group Art Unit: 1615

Amendment C

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

This amendment is in response to the Office Action mailed on December 4, 2000, with a response due March 4, 2000. Claims 25 - 47 are now pending. Applicant hereby requests that the application please be amended as follows:

IN THE CLAIMS:

Please amend claim 28, 29, 35, 39, 40, and 41 respectively as follows:

28. (Amended) A fish oil capsule for palatable presentation of fish oil comprising:
   a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and wherein said water soluble flavoring is present in a concentration between about 0.50 % and about 1.50 % of said gelatin capsule; and
   b) a fish oil dose, said gelatin capsule encapsulating said fish oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

29. (Amended) The fish oil capsule claimed in claim 28, wherein said water soluble flavoring is present in a concentration between about 0.5% and about 1.0% of said gelatin capsule.

35. (Amended) The fish oil capsule claimed in claim 31, further comprising an oil soluble flavoring, wherein said oil soluble flavoring is dissolved in said fish oil dose.

39. (Amended) The fish oil capsule claimed in claim 37, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of eicosapentanoic acid and docosahexanoic acid.

40. (Amended) The fish oil capsule claimed in claim 38, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of eicosapentanoic acid and docosahexanoic acid.

41. (Amended) A fish oil capsule for palatable presentation of fish oil comprising:
   a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and said water soluble flavoring is present in said gelatin capsule in a concentration between about 0.25% and about 0.50 %, and wherein said gelatin capsule comprises between 10 and 35 percent of said gelatin softener, and said gelatin softener comprises at least one polyol, said polyol chosen from the group consisting of glycerol and sorbitol; and
   b) a fish oil dose, said gelatin capsule encapsulating said fish oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

Please cancel claims 32 and 34.

### REMARKS/ARGUMENTS

**Claim objections and Rejections under 35 U.S.C. 112**
The typographical errors in claims 35 and 41 have been corrected (which repairs the 35 U.S.C 112 problem in claims 41-44), the abbreviations for EPA and DHA have been spelled out, and claims 32 and 34 have been cancelled.

**Rejections under 35 U.S.C 103**
The broadest claims 25 - 27 have been separated from claims 28 - 44 to emphasize different evidence for patentability in the two claim sets, i.e., that the patentability of claims 28 - 44 stands independent from claims 25 - 27. Claims 25 -27 are respectfully argued based on inadequacy of the references sited to comprise a prima facie case of obviousness. Claims 28 - 44, additional arguments are presented based on evidence of superior and unexpected results presented in Rule 132 declarations submitted with Amendment B and with this Amendment C. In Particular an additional Declaration has been provided to answer questions raised by Dr. Gollamudi S. Kishore in an interview on February 28, 2001 regarding the scope and procedures for testing flavor addition to the capsule shells.

**Patentability of Claims 25-27 and 45**
The major distinction of the instant invention is inclusion of flavoring *in the gelatin capsule shells* of a capsule filled with fish oil to promote palatability of the fish oil in a capsule filled with fish oil, and the most important issue is whether addition of flavoring to capsule shells is obvious based on the references. The only reference pertaining to inclusion of flavoring *in the gelatin capsule shells* is in Coapman, US 5,141,961 '961. The other references deal solely with flavoring the capsule contents or identifying different

flavorings which have been used with various pharmaceuticals, but *not* with adding flavoring to the capsule shell'. The entire teaching on this point in '961 is as follows: " Other optional components which can be incorporated into the soft gelatin shells include colorings, flavorings, preservatives, anti-oxidants, essences, and other aesthetically pleasing components."

It is respectfully argued that adding flavoring to capsule shells is not at all obvious based on the well known art of adding flavoring to the ingredients themselves. It is further argued, that the very limited teaching in '961 is not sufficiently enabling to suggest that inclusion of flavoring *in the shell* of a gelatin capsule filled with fish oil would have an appreciable effect on palatability of the entire capsule (shell and fish oil). There is no indication in '961 (other than the quotation above) that palatability is a subject in the '961 invention. The capsule is characterized as "easy to swallow" (col. 1, line 27) and rapidly dissolving in the gastrointestinal tract (col. 29-30). There is no indication that the amount of flavoring is an important variable as has been discovered by the applicant (see discussion below under claims 28 - 40, describing experimental results of criticality of the flavoring concentration). At most, mention of flavoring on a list of optional ingredients such as found in '961 might be considered to be the type of reference that "gives general guidance and is not at all specific as to the particular form of the claimed invention or how to achieve it" and which the Board has characterized as an "invitation to explore" which may make an approach "obvious to try" but not make the invention obvious. *Ex parte Obukowicz*, 27 USPQ 2d 1063 (B.P.A.I. 1992).

Patentability of Claims 28 - 44 and 46,47 - Proof of Unexpected Results
The claims in question recite a particularly narrow range of flavoring concentrations in the shell, 0.5 to 1.5% in claim 28. The OA states that "It is within the skill in the art to select optimal parameters such as ratios and weight percents of components in order to achieve a beneficial effect" and sites *In re Boesch*, 205 USPQ 215 (CCPA 1980) as authority. In *Boesch* an metal alloy composition was optimized by setting four parameters according to a particular criteria set forth. The alloy compositions were all within the well defined ranges of the prior art, and were nearly identical with prior art compositions. The *Boesch* court set the criterion for rebutting a prima facie case of obviousness of a range "where results of optimizing a variable, which was known to be result effective, are unexpectedly good; proof of unexpected results properties may be in the form of direct or indirect comparison testing the claimed compounds and closest prior art." In *Boesch* the court held that the applicant did not meet the burden, because he did not sufficiently meet the burden of comparing his range to the many close prior art compositions.

In the instant case, the '961 patent *does not disclose a range of concentrations for the flavoring in gelatin capsule shells*, but merely states that flavoring is as an "optional ingredient". No concentrations were given, and no indication that concentration of

---

[1] The OA seems to indicate that US 5,874,418 ('418) teaches a "capsule comprising gelatin, glycerin and flavoring agent". It is respectfully submitted, however, that '418 simply defines encapsulating agents, flavorants, flavors etc. in "as used herein" definitions, but never suggests combining flavors with the capsule shell.



3

flavoring was an important variable. If one nonetheless accepts that '961 is a sufficient disclosure, it is respectfully submitted that the Applicant's Rule 132 Declarations, submitted as Exhibit 1 to Amendment B (the preliminary amendment submitted with the CPA filed 10/17/2000) and the Exhibit to this Amendment C, providing supplemental information, now satisfy the standard for rebutting a prima facie case of obviousness by presenting evidence of unexpectedly good results.

Referring to the Exhibits, data are shown justifying the following statements:

1. At least ten different natural flavorings were tested including strawberry, lemon, peppermint, peach, orange and butterscotch. In each flavor tested, the flavoring improved the taste only in an unexpectedly narrow range of flavoring concentrations, which ranged between 0.25 to 1.75 weight per cent in each case. This result was unexpected to the applicant and to the lab which made the samples for him.
2. The testing was conducted in two steps, first to find a generally palatable range and then to find a further preferred range within the first range.
3. The testing was started with concentrations of 8-10% for each flavor and went down to 0.25-0.5%. In all cases the palatability was better at the lower concentrations and in no case was a capsule consumable with a flavor content of the shell greater than 3%.
4. The flavor of the capsules was evaluated by panels, each panel comprising at least eight adults and from three to five children. The children's inputs were given considerable weight.
5. At 1.5% and above flavoring concentration the capsules would typically become unacceptably soft, presumably due to interactions between the flavoring and the gel capsule components. Shell softening leads to air leaking into the capsules and the fish oil turning rancid and unpalatable. (The importance of capsule hardness is discussed in Exhibit 1 to Amendment B in the context of water concentration requirements).
6. Long term storage effects were observed. The adequacy of a flavoring diminishes with storage for oils with low omega 3 concentrations, requiring higher initial flavoring concentrations.

The interaction of shell hardness and flavoring concentration is by no means reported in the cited art and is important to the technology of making fish oil capsules. Similarly the taste/concentration effect was not known nor would it have been obvious to one of ordinary skill in the art that palatability lies in such a narrow range of concentrations while higher concentrations are unpalatable. A person trying to make a flavored shell to improve palatability of fish oil capsules could easily missed the proper range and concluded that the improvement was unfeasible. The range claimed has unexpected and superior results compared to the rest of the potential concentrations.

The applicant stated that these results were unexpected by him, in spite of his substantial experience and expertise in producing fish oil products, and required substantial



NOR 0000122

experimentation. In view of the applicant's experimental results, it is clear that the disclosure in '961 of optional inclusion of flavorings would not have led someone to use flavoring in the capsule shell to produce a palatable fish oil capsule with reasonable expectation of success.

It is respectfully argued that applicant has met the burden of rebutting a prima facie case of obviousness; reconsideration and allowance of these claims is requested.

Patentability of Claims 41 - 44
Claims 41 to 44 represent a special case of claim 28, wherein an unexpected lower flavoring concentration is required for certain capsules containing over 80% Omega-3 fatty acids, as described in the application. The basis for these claims follows claim 28, as modified by the special finding regarding composition of the fish oil.

## CONCLUSION

It is respectfully submitted that the applicant has overcome the rejections to claims 25 through 47 by amendment, argument, and evidence of superior and unexpected results and requests reconsideration and allowance of all outstanding claims.

Attached hereto is a marked-up version of the changes made to the specification and claims by the current amendment. The attached page is captioned "Version with markings to show changes made."

Respectfully Submitted,

*Howard E. Lebowitz*

Howard E. Lebowitz
Registration Number 44,864
Agent for the Applicant
905 West Middlefield Road, No. 971
Mountain View, CA 94043
Telephone 650-964-0665

5

NOR 0000123

Version with markings to show changes made

In the claims:
Claims 28, 29, 35, 39, 40, and 41

28. (Amended) A [The] fish oil capsule for palatable presentation of fish oil comprising:
    a) [claimed in claim 26,] a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and wherein said water soluble flavoring is present in a concentration between about 0.50 % and about 1.50 % of said gelatin capsule; and
    b) a fish oil dose, said gelatin capsule encapsulating said fish oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

29. (Amended) The fish oil capsule claimed in claim 2[7]8, wherein said water soluble flavoring is present in a concentration between about 0.5% and about 1.0% of said gelatin capsule.

35. (Amended) The fish oil capsule claimed in claim 31, further comprising an oil soluble flavoring, wherein said oil soluble flavoring is dissolved in said fish oil dose [wherein said oils soluble flavoring is present in a concentration between about 0.5% and about 1.0% of said fish oil dose].

39. (Amended) The fish oil capsule claimed in claim 37, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of eicosapentanoic acid [EPA] and docosahexanoic acid [DHA].

40. (Amended) The fish oil capsule claimed in claim 38, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of eicosapentanoic acid [EPA] and docosahexanoic acid [DHA].

41. (Amended) A fish oil capsule for palatable presentation of fish oil comprising:
    a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and said water soluble flavoring is present in said gelatin capsule in a concentration between about 0.25% and about 0.50 %, and wherein said gelatin capsule comprises between 10 and 35 percent of said gelatin softener, and said gelatin softener comprises at least one polyol, said polyol chosen from the group consisting of glycerol and sorbitol; and
    b) a fish oil dose, said gelatin capsule encapsulating said fish [duel] oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

NOR 0000124

EXHIBIT

Rule 132 Declaration by Applicant Joar Opheim

7

NOR 0000125