1  MCDERMOTT WILL & EMERY LLP
   William G. Gaede III (136184)
2  3150 Porter Drive
   Palo Alto, CA  94304-1212
3  Telephone:    (650) 813-5000
   Facsimile:    (650) 813-5100
4
   Attorneys for *J.R. Carlson Laboratories, Inc.*
5  *and Metagenics, Inc.*

6

7

8              IN THE UNITED STATES DISTRICT COURT

9        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  NORDIC NATURALS, INC.                    Case No. C-07-2385 MJJ

13                Plaintiff,                 **DEFENDANTS' CLAIM
                                             CONSTRUCTION BRIEF AND
14  v                                        OPPOSITION TO PLAINTIFF'S
                                             CLAIM CONSTRUCTION BRIEF**
15  J.R. CARLSON LABORATORIES, INC.
    and METAGENICS, INC.                     Date:        March 12, 2008
16                                           Time:        9:00 a.m.
                  Defendants.                Courtroom: 11
17
                                              Honorable Martin J. Jenkins
18
    AND RELATED COUNTERCLAIMS
19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

# TABLE OF CONTENTS

2

**Page**

3  I.      INTRODUCTION ................................................................................................ 1

4  II.     BACKGROUND OF THE TECHNOLOGY ...................................................... 3

5  III.    LEGAL FRAMEWORK FOR CLAIM CONSTRUCTION .............................. 3

6  IV.     THE TWO PRIMARY CLAIM CONSTRUCTION DISPUTES .................... 6

7          A.     "Water-Soluble Flavoring" and "Flavored Gelatin Capsule" Include
                  Sweeteners and Other Ingredients That Affect or Alter the Taste of the
8                 Gelatin Capsules .................................................................................. 6

9                 1.     Plaintiff's Argument That the Ordinary Meaning of "Flavoring"
                         Excludes Sweeteners is Unavailing and Undermined By Its
10                       Representations to the PTO ....................................................... 9

11                2.     Plaintiff Admits That "Water Soluble Flavoring" Differs From And
                         Does Not Include "Oil Soluble Flavoring" ............................. 11

12         B.     The Claimed Ranges of Flavoring, Water and Softener in the Gelatin
13                Capsules Requires That Such Concentrations Are Within the Specified
                  Range Throughout the Gelatin Capsule ............................................... 11

14                1.     The Intrinsic Record Requires That Water Soluble Flavoring Be
15                       Present Throughout the Gelatin Capsule ................................. 12

16                2.     The Claim Language Limits Plaintiff's Claims to the Stated Ranges
                         of Water, Water Soluble Flavoring, and Gelatin Softener ...... 16

17  V.     THE SECONDARY CLAIM CONSTRUCTION DISPUTES ........................ 18

18         A.     Gelatin Softener ................................................................................. 18

19         B.     Palatable, Palatability ....................................................................... 18

20         C.     Gelswatch .......................................................................................... 19

21  VI.    CONCLUSION ................................................................................................ 19

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Abbott Labs. v. TorPharm, Inc.*
  300 F.3d 1367 (Fed. Cir. 2002) ...................................................................... 4

5

*Alpex Computer Corp. v. Nintendo Co. Ltd.*
  102 F.3d 1214 (Fed. Cir. 1996) ................................................................. 5, 8

6

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*
  268 F.3d 1352 (Fed. Cir. 2001) ............................................................. 4, 16

7

*Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.*
  262 F.3d 1258 (Fed. Cir. 2001) ...................................................................... 4

8

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*
  224 F.3d 1308 (Fed. Cir. 2000) ......................................................... 5, 6, 11

9

*Cytologix Corp. v. Ventana Med. Sys., Inc.*
  424 F.3d 1168 (Fed. Cir. 2005) ...................................................................... 3

10

*Ekchian v. Home Depot, Inc.*
  104 F.3d 1299 (Fed. Cir. 1997) ................................................................. 5, 8

11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
  234 F.3d 558, 569 (Fed. Cir. 2000) ............................................................ 17

12

*Gillespie v. Dywidag Systems*
  501 F.3d 1285 (Fed. Cir. 2007) ................................................................. 5, 8

13

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................. 3, 4

14

*Interactive Gift Express, Inc. v. Compuserve, Inc.*
  256 F.3d 1323 (Fed. Cir. 2001) ...................................................................... 4

15

*Laitram Corp. v. Rexnord, Inc.*
  939 F.2d 1533 (Fed. Cir. 1991) ...................................................................... 7

16

*Liebel-Flarsheim Co. v. Medrad, Inc.*
  358 F.3d 898 (Fed. Cir. 2004) ................................................................. 7, 10

17

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................. 3, 4, 5, 6

18

*Rheox, Inc. v. Entact, Inc.*
  276 F.3d 1319 (Fed. Cir. 2002) ...................................................................... 4

19

*Southwall Techs., Inc. v. Cardinal IG Co.*
  54 F.3d 1570 (Fed. Cir. 1995) ...................................................................... 6

20

*Springs Window Fashions L.P. v. Novo Indus., L.P.*
  323 F.3d 989 (Fed. Cir. 2003) ...................................................................... 5

21

*Vitronics Corp. v. Conceptronic, Inc.*
  90 F.3d 1576 (Fed. Cir. 1996) ............................................................. 3, 4, 5

22

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*
  200 F.3d 795 (Fed. Cir. 1999) .................................................................... 18

23

24

25

26

27

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

STATUTES

4

21 C.F.R. § 172.585.............................................................................................................. 9

OTHER AUTHORITIES

5

*Webster's New World College Dictionary*, 3rd Ed. (1995) ............................................... 8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

- iii -

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF**
**AND OPPOSITION TO PLAINTIFF'S BRIEF**
**CASE NO. C-07-2385 MJJ**

## I.    INTRODUCTION

Plaintiff Nordic Naturals, Inc.'s ("Nordic Naturals" or "Plaintiff") two patents, U.S. Patent No. 6,346,231 ("'231 Patent") and U.S. Patent No. 6,652,879 ("'879 Patent")[1] are directed towards a common concern: improving the taste of soft-gelatin capsules that contain unpleasant tasting fish oils.[2]    There is a long history in the art of increasing compliance by consumers through improving the taste of medicines and food supplements, including those encapsulated in gelatin.    Allegedly, Plaintiff's claims narrowly resolved this concern by patenting the addition of a defined concentration of a small amount of water soluble flavoring in a gelatin capsule that encapsulates the fish oil.    Now, Plaintiff seeks through claim construction to limit its narrow claim further to exclude prior art in one aspect, and to stretch the claim in another aspect to try to ensnare the gelatin fish oil capsule products of J. R. Carlson Laboratories, Inc. and Metagenics, Inc. (collectively "Defendants").    In doing so, Plaintiff is improperly ignoring the representations it made to the PTO, thus undermining the notice that the patent and the prosecution history provides to the public.

The "intrinsic" record of the patents' claims, the specification, and the prosecution histories show Plaintiff's attempt to twist the claims lacks any basis.    Specifically, on the two main claim construction issues:

- Plaintiff may not read limitations into the '231 and the '879 patents to exclude from the phrase "water soluble flavoring" those water soluble substances such as sugar that improve the taste and flavor of the gelatin capsules by increasing their overall sweetness.    Proper construction does not inject additional limitations to exclude sweeteners while permitting other forms of flavoring. Defendants' construction is in agreement with Plaintiff's own patent claims,

---

[1] U.S. Patent Nos. 6,346,231 and 6,652,879 are attached as Exhibits A and B to the Declaration of Brian L. Baker in Support of Defendants' Claim Construction Brief ("Baker Decl.").
[2] The term "gelatin capsule" and "gelatin capsule shell" are used interchangeably in the prosecution history of the patents and in this brief, both meaning the shell portion as opposed to the filling inside the capsule (the "fill").

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

the specification, admissions of claim scope in the prosecution history, as well as the extrinsic art and dictionary definitions;

- The '231 and the '879 patents cannot be stretched to encompass gelatin capsules that have water soluble flavoring present in only part of the gelatin capsule or as a layer on the capsule shell and beyond the narrow specified concentration range listed in the claims. Proper construction limits the '231 and '879 patents to water soluble flavoring that is present throughout the gelatin capsule within the defined concentration. Moreover, the use of identical language in the claims with respect to both "water" and "water soluble flavoring," *viz.,* "wherein said water [or water soluble flavoring] is present in said flavored gelatin capsule in a concentration which is in the range of about . . ." requires consistency between the construction of this language with respect to both "water" and "water soluble flavoring." Thus, Plaintiff's construction means that ***water***, like water soluble flavoring, need not be present throughout the capsule, but may instead be present as "***layers or sections of materials***" – a result entirely at odds with the intrinsic record. Again, the plain claim language, the specification, admissions in the prosecution history, and extrinsic evidence support Defendants' construction.

Defendants respectfully request that the Court construe the '231 and the '879 patent claims consistent with the intrinsic record and reject Plaintiff's attempt: (1) to limit the scope of what constitutes a water-soluble flavoring to exclude sweeteners; and (2) to permit the gelatin capsule to have uneven distribution of the water-soluble flavoring ingredient that fails to satisfy the concentration limitation of the claims. Other issues identified in the Joint Claim

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

- 2 -

1  Construction Statement are not material to the resolution of this case, but are addressed as well in

2  Section V.

3  **II.    BACKGROUND OF THE TECHNOLOGY**

4      Soft gelatin capsules have been available since the 1930's.  The gelatin capsule shell is

5  composed of gelatin, plasticizer and water, and may contain additional ingredients.  As the

6  specification teaches, the gelatin capsule is formed from the "gelswatch," which is a mixture of

7  the ingredients.  From this gelswatch, the capsule shell itself is formed and filled with the "fill"

8  ingredients, *e.g.* fish oil, by an encapsulation machine.

9      As the prosecution history of the patents and the prior art cited make clear, Plaintiff did

10  not invent flavoring gelatin capsules.  Numerous prior art examples existed stretching back at

11  least to the 1980's.  (Baker Decl., Ex. K (exhibits B and C).)  As a result, Plaintiff was required

12  to limit the claims to a narrow invention that comprised a gelatin capsule (1) where "water" is

13  "present in said gelatin capsule" "in a concentration between about 6% and 10%" and (2) where

14  the capsule comprises "a water soluble flavoring" that "is present in a concentration between

15  about 0.50% and about 1.50% of said gelatin capsule."[3]  (*See* Baker Decl., Ex. A.)  Plaintiff has

16  asserted claims 1-4 and 16 of the '231 Patent and claims 1-6 of the '879 Patent.

17  **III.    LEGAL FRAMEWORK FOR CLAIM CONSTRUCTION**

18      Claim construction is a question of law and "follow[s] the methodology set forth in [the]

19  *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)."

20  *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).  "It is a

21  'bedrock principle' of patent law that 'the claims of a patent define the invention to which the

22  patentee is entitled the right to exclude'."  *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure

23  Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see

24  also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the

25  words of the claims themselves . . . to define the scope of the patented invention").  The

26

27  _____
   [3] The asserted claims of the '879 patent limit water soluble flavoring to be "in a concentration
28  which is in the range between about 0.25% and about 1.5%" of the flavored gelatin capsule.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ**

1    analytical focus begins with and remains centered on the language of the claims themselves.  *See*

2    *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  In

3    other words, the claim language provides substantial guidance as to the meaning of a disputed

4    claim term.  *See Phillips*, 415 F.3d at 1314.

5          The ordinary meaning of claim language as understood by a person of skill in the art may

6    be readily apparent even to lay people because the term "involves little more than the application

7    of the widely accepted meaning of commonly understood words." *Id.* at 1314.  In cases where

8    the meaning of the term is not commonly understood to lay people, the court looks to a variety of

9    sources that would also be available to the public, namely "words of the claims themselves, the

10   remainder of the specification, the prosecution history, and extrinsic evidence concerning

11   relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

12   (quoting *Innova/Pure Water*, 381 F.3d at 1116).

13         After examining the plain language of the claims, the "specification is always highly

14   relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to

15   the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

16         The prosecution history is to be examined to determine whether a patentee has limited or

17   defined the scope of the claims.  *Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.*,

18   262 F.3d 1258, 1268 (Fed. Cir. 2001); *see also Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325-

19   27 (Fed. Cir. 2002) (statements made during prosecution may also offer interpretative assistance

20   to the court in construing a particular claim).  The "prosecution history may limit claim scope if

21   the patentee disclaimed or disavowed a particular interpretation of the claims during

22   prosecution." *Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1372 (Fed. Cir. 2002).  Indeed,

23   explicit statements made by a patentee during prosecution that distinguishes its claimed

24   invention over prior art can narrow the scope of a claim.  *See, e.g., Ballard Med. Prods. v.*

25   *Allegiance Healthcare Corp.*, 268 F.3d 1352, 1361-62 (Fed. Cir. 2001) (finding a disclaimer of

26   broader claim scope where patentee distinguished the claimed valves from the prior art valves).

27         A patent applicant who, in overcoming a rejection by the PTO, makes a clear avowal

28   regarding the invention is estopped from later asserting an inconsistent position during claim

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

construction. *Alpex Computer Corp. v. Nintendo Co. Ltd.,* 102 F.3d 1214, 1221 (Fed. Cir. 1996) ("Just as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction. . . ."); *Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, [and] he is by implication surrendering such protection.").

Further, the patentee is held to what he declares during the prosecution of the patent. *Gillespie v. Dywidag Systems*, 501 F.3d 1285, 1291 (Fed. Cir. 2007). "The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

Extrinsic evidence encompasses all evidence that is not part of the patent itself (the claims and specification) or of the prosecution history of the patent. *See Vitronics*, 90 F.3d at 1584. If the meaning of the claim limitation is apparent from the intrinsic evidence alone, it is improper to rely on extrinsic evidence other than that used to ascertain the ordinary meaning of the claim limitation. *Id.* at 1583. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Id.* However, in the rare circumstances that the Court is unable to determine the meaning of the asserted claims after assessing the intrinsic evidence, it may look to additional evidence that is extrinsic to the complete document record to help resolve any lack of clarity. *Id.* at 1584. Extrinsic evidence may always be used by the Court to educate itself regarding the technology of the patents-in-suit; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history. *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1318 (Fed. Cir. 2000).

"[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*, 415 F.3d at 1319 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   1570, 1578 (Fed. Cir. 1995)).  In contrast, undue reliance on the intrinsic evidence must be

2   tempered by "one of the cardinal sins of patent law – reading a limitation from the written

3   description into the claims."  *Id.* at 1320.  The *Phillips* court opined that this sin could be avoided

4   by distinguishing between words that restrict the invention to a specific description, from words

5   that exemplify how to practice an invention.  *Id.* at 1323.

6   **IV.    THE TWO PRIMARY CLAIM CONSTRUCTION DISPUTES**

7       **A.    "WATER-SOLUBLE FLAVORING" AND "FLAVORED GELATIN CAPSULE" INCLUDE
             SWEETENERS AND OTHER INGREDIENTS THAT AFFECT OR ALTER THE TASTE OF
8            THE GELATIN CAPSULES**

9              Each of the asserted claims in the '231 and the '879 patents refer to "water soluble

10  flavoring," while each of the claims of the '879 patent also refer to "flavored gelatin capsule."

11  The ordinary meaning of "water-soluble flavoring" as used in the patent claims – and as

12  confirmed by the intrinsic record – means "a substance that has the capacity to affect the sense of

13  taste and that is susceptible to being dissolved in water."  Joint Claim Construction Statement

14  ("JCCS") (Docket No. 30), Ex. A, p. 2, J.R. Carlson and Metagenics Proposed Construction.

15             Plaintiff improperly reads into these claims a limitation to narrow the meaning of

16  "flavoring" to be "a substance or material used to alter the natural flavor, ***as opposed to the***

17  ***sweetness***, of a food item that can be easily dissolved in water."  The parties agree that the

18  substance must be easily dissolved or soluble in water; they disagree on whether "flavoring"

19  excludes water-soluble substances such as sugar, saccharin and other substances that affect the

20  taste sensation of sweetness.

21             Neither patent contains claim language that excludes substances that sweeten from the

22  claim term "flavoring" and "flavored."  Claim 1 of the '231 patent states:

23      A fish oil capsule for palatable presentation of fish oil comprising:  (a) a gelatin
        capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, *and a*
24      *water soluble flavoring*, wherein said water is present in said gelatin capsule in a
        concentration between about 6% and about 10%, and wherein said water soluble
25      flavoring is present in a concentration between about 0.50% and about 1.50% of
        said gelatin capsule. . . .
26

27  (Baker Decl., Ex. A, col. 4, ll. 26-34 (emphasis added).)  Similarly, Claim 1 of the '879 patent

28  states:

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

> A *flavored gelatin capsule* suitable for encapsulating a dose, said flavored gelatin capsule comprising gelatin, a gelatin softener, water, and *a water soluble flavoring*, wherein said water soluble flavoring is present in said flavored gelatin capsule in a concentration which is in the range between about 0.25% and about 1.5% of said flavored gelatin capsule. . . .

(Baker Decl., Ex. B, col. 4, ll. 35-41 (emphasis added).)

The remainder of the intrinsic record confirms that Plaintiff never limited the ordinary meaning of "flavoring" to exclude ingredients that alter or affect the taste of gelatin capsules by sweetening them. First, the lack of limitation on what constitutes a "flavoring" in Claim 1 of the '231 patent should be contrasted to the dependent Claim 3, which expressly references species of possible flavorings.[4] Differences among claims can be a useful guide in understanding the meaning of particular claim terms. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). As such, "flavoring," as used in Claim 1, is much broader than as used in Claim 3.

Second, the specification supports that the ordinary meaning of "flavoring" includes a broad range of materials that alter the "taste" of the gelatin capsule, which a sweetener plainly does. The background of the invention makes clear that flavoring is tied to the sensation of "taste." ("The *taste* of many medicinal and nutritive components can be quite distinctive and potentially unpleasant. Improvements in the *taste* of certain drugs and nutritional supplements can lead to a higher compliance by consumers.") (Baker Decl., Ex. A, col. 1, ll. 12-15 (emphasis added).) The summary of the invention ties flavoring to taste, *viz*: "The flavoring of the capsule improves the *taste* and *palatability* of the capsule and will subjectively improve the *taste* of the gelatin and a dose or contents contained within the flavored gelatin capsule to individual consumers or patients." (*Id.* at col. 2, ll. 17-21.) Such express statements that flavoring is tied to

---

[4] Claim 3 of the '231 patent claims: The fish oil capsule claimed in claim 1, wherein said water soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple. (Baker Decl., Ex. A, col. 4, ll. 42-47.)

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

- 7 -

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

1  taste (with sweetness being one of the sensations of taste[5]) undercuts any argument that the

2  specification expressly excludes sweeteners from the construction of "flavoring."

3      Third, Plaintiff's representations to the PTO are consistent with Defendants' construction

4  and inconsistent with Plaintiff's current position that "flavoring," as used in the patent claims,

5  excludes sweetening agents.  During prosecution of the '231 Patent, Plaintiff distinguished over

6  prior art by stating that the specific prior art reference "does not anticipate adding ***flavorants or***

7  ***sweetening agents*** to the gelatin capsules, ***<u>which is a key point</u>*** in all of the claims." (Baker

8  Decl., Ex. D at pp. 5-6.) (emphasis added).  Plaintiff expressly avowed to the public that a "key

9  point" of the claims included sweetening agents, and this is binding on Plaintiff.  *See Gillespie*,

10  501 F.3d at 1291; *Alpex Comp. Corp.,* 102 F.3d at 1221; *Ekchian,* 104 F.3d at 1304.  Plaintiff's

11  expressed public representations to the PTO directly contradict Plaintiff's litigation attempt to

12  twist the claims into excluding sugars and other sweeteners from the terms "water soluble

13  flavoring" and "flavored gelatin capsule."

14      A bevy of extrinsic evidence supports Defendants' position that the ordinary definition of

15  "flavoring" includes a broad range of ingredients that alter the taste, including the sweetness, of

16  the gelatin capsule.  First, the dictionary offers insight into what constitutes "flavoring."  To

17  start, the definition of "taste" is:

18      That one of the five senses that is stimulated by contact of a substance with the
       taste buds and is capable of distinguishing basically among *sweet, sour, salt, and*
19     *bitter*: the flavor or any specific substance is usually recognized by its combined
       taste, smell, and texture.
20

21  (Baker Decl., Ex. C, p. 1370 emphasis added).)  Next, the definition of "flavor" is:

22      Any substance added to a food, medicine, etc. to give it a particular taste;
       flavoring.

23  (*Id.* at p. 515.)  Sweetness is a sensation of taste, and flavor is a substance that stimulates the

24  taste buds, which sweeteners plainly do.

25

26

27  [5] *Webster's New World College Dictionary*, 3rd Ed. (1995), p. 1370 (definition of "taste").  (Baker
    Decl., Ex. C.)
28

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

Second, the Food and Drug Administration has determined that sugar, such as that extracted from sugar beets, "is used as a flavor in food." *See* 21 C.F.R. § 172.585.

Third, other patents in the relevant field of soft gelatin capsules support the ordinary definition of "flavoring" as including sweeteners. The specification of a 1984 patent on chewable soft elastic gelatin capsules that Plaintiff cites in the Joint Claim Construction Statement, U.S. Patent No. 4,428,927, states:

> Suitable taste modifiers or flavorings are used in the fill composition, the gelatin composition, or in both simultaneously. The particular taste modifier and/or flavor that is used may vary widely. Similarly, the proportions between various taste modifiers and/or flavors vary widely according to the taste desired. The taste modifiers and/or flavorings may be desirably selected from the following: cherry syrup, citric acid, dextrose, essential oil (i.e., clove, lemon, orange, peppermint, spearmint), ethyl vanillin, glucose, honey, mannitol, methyl salicylate, raspberry syrup, saccharin, saccharin sodium, sorbitol, sucrose, wild cherry syrup, and mixtures thereof.

(Baker Decl., Ex. E, col. 4, ll. 13-26.)

*Remington's Pharmaceutical Sciences*, a leading treatise, lists numerous sweeteners, including dextrose, glucose, glycerin, mannitol, saccharin, sorbitol, and sucrose as "flavoring agents." (Baker Decl., Ex. F, p. 1231.) Further, in an article titled "Softgels: Manufacturing Considerations," sugar, such as sucrose, is listed along with ethyl vanillin and essential oils as ingredients that can be added to gelatin to improve the taste of the gelatin capsules. (Baker Decl., Ex. G, p. 422.)

In sum, "flavoring" should be construed in accordance with its plain and ordinary meaning, the intrinsic record, particularly the dispositive avowal in the prosecution history, and the extrinsic evidence to include all flavoring substances, including sweeteners.

**1.    Plaintiff's Argument That the Ordinary Meaning of "Flavoring" Excludes Sweeteners is Unavailing and Undermined By Its Representations to the PTO**

Plaintiff failed to present any compelling support for its attempt to narrow the scope of the term "flavoring" to exclude ingredients that sweeten. At the outset, Plaintiff summarily asserted that "a person of ordinary skill in the art" would agree with Plaintiff's construction and yet never offered any evidence of what a "person of ordinary skill in the art" actually believes "flavoring"

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1   means.  (Plaintiff's Brief at p. 8).  Plaintiff's misleading references to intrinsic and extrinsic

2   evidence also fail to bolster its self-serving construction of "flavoring."

3          First, the general dictionary definitions cited by Plaintiff for "flavor" and "flavoring" do

4   not support Plaintiff's construction of "flavoring" as "a substance or material used to alter *the*

5   *natural flavor, as opposed to the sweetness*, of a food item."  (emphasis added).  Neither of

6   Plaintiff's definitions make any reference to a "natural" flavor.  Nor do they indicate that

7   substances affecting the sweetness of a food item are classified differently and thus do not

8   constitute "flavoring."  (Plaintiff's Brief at p. 8).  To the contrary, these definitions reinforce that

9   "flavoring" is something that alters the "taste" of a substance, and as stated above, sweetness is

10  one of the four factors affecting "taste."

11         Second, rather than support that sweeteners are classified differently than flavorings as

12  Plaintiff contends, Claim 3 of the '231 Patent notifies that the construction of "flavoring" is

13  actually broader.  (Plaintiff's Brief at p. 9).  As addressed earlier, the presence of a dependent

14  claim that adds a particular limitation gives rise to a presumption that the limitation in question is

15  not present in the independent claim.  *See Liebel-Flarsheim Co.*, 358 F.3d at 910.  While the

16  dependent Claim 3 may list flavorings that "impart the flavor of a food" this limitation does not

17  narrow the scope of "flavor" and "flavoring" as it is used in the independent Claim 1.  (*See*

18  Plaintiff's Brief at p. 9).[6]  Instead, "flavoring" as used in Claim 1 includes "sweetening agents" as

19  Plaintiff told the PTO during examination of the patents.  (Baker Decl., Ex. D at pp. 5-6.).

20         Third, Plaintiff's citation to three extrinsic references does not support that sweeteners are

21  distinct from flavorings as it is used in the patents.  These three references are unenlightening and

22  ultimately improperly relied upon.  (Plaintiff's Brief at pp. 9-10).  The first reference uses the

23  terms "flavorants" and "sweetening agents," the second lists "flavorings [and] sugars," and the

24  third lists "taste modifiers and/or flavorings" as potential ingredients to add to the gelatin.  The

25

26  [6] Moreover, Plaintiff's assertion at page 9 of its brief that "just sweetening a fish oil capsule
    would not result in a more pleasant tasting product" is wholly irrelevant and undermined by the
27  plain statement in the patents that "[t]aste is both a matter of purely subjective preference."  ('231
    Patent col. 1 l. 19).
28

MPK 138002-3.062114.0123                      - 10 -                 **DEFENDANTS' CLAIM CONSTRUCTION BRIEF**
                                                                                              **AND OPPOSITION TO PLAINTIFF'S BRIEF**
                                                                                              **CASE NO. C-07-2385 MJJ**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    terminology in each of these references varies and none inform the Court on Plaintiff's alleged

2    distinction between "sweeteners" and "flavorings."

3        Moreover, Plaintiff may not now use these extrinsic references to vary, contradict,

4    expand, or limit the claim language from how it is defined in the file history. *See CAE*

5    *Screenplates,* 224 F.3d at 1318. Tellingly, Plaintiff told the PTO that a key point to each of its

6    patent claims (containing the term "flavoring") was a specific range of "flavorants" and

7    "sweetening agents" used in the gelatin. Plaintiff made it clear to the PTO and the public that

8    "flavoring," as used in each of its claims, encompassed both "flavorants" as well as "sweetening

9    agents." Thus, Plaintiff's present proposed narrow construction of "flavor" and "flavoring" to

10   exclude sweetening agents is improper and must be rejected.

11                    **2.    Plaintiff Admits That "Water Soluble Flavoring" Differs From And
                         Does Not Include "Oil Soluble Flavoring"**
12

13       While Defendants' and Plaintiff's present construction of "water soluble" do not differ

14   greatly,[7] it is important to note that "water soluble" is distinct from "oil soluble." As Plaintiff

15   admitted in its Opening Claim Construction brief, and as it told the PTO during prosecution,

16   "water soluble flavoring" differs from "oil soluble flavoring." (Plaintiff's Brief at p. 10). Thus,

17   both parties agree that Plaintiff's asserted claims do not cover "oil soluble flavoring" in the

18   gelatin capsule.

19       **B.    THE CLAIMED RANGES OF FLAVORING, WATER AND SOFTENER IN THE GELATIN
                 CAPSULES REQUIRES THAT SUCH CONCENTRATIONS ARE WITHIN THE
20               SPECIFIED RANGE THROUGHOUT THE GELATIN CAPSULE**

21       Both the '231 and the '879 patent claims set forth a limited acceptable range of the

22   overall percentage of total ingredients present in the gelatin capsules. For example, Claim 1 of

23   the '879 patent claims:

24       A flavored gelatin capsule suitable for encapsulating a dose, said flavored gelatin
         capsule comprising gelatin, a gelatin softener, water, and a water soluble
25       flavoring, *wherein said water soluble flavoring **is present in** said flavored gelatin
         capsule **in a concentration** which is in the range between about 0.25% and about*
26

27   _____
     [7] Plaintiff construes "water soluble" as "easily dissolved in water" while Defendants construe
28   "water soluble" as "susceptible to being dissolved in water."

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1

2

*1.5% of said flavored gelatin capsule*, and wherein said water **is present in** said flavored gelatin capsule **in a concentration** in the range between about 6% and about 10% of said flavored gelatin capsule. . . .

3    (Baker Decl., Ex. B, col. 4, ll. 35-44 (emphasis added).)  Express in the ordinary meaning of the

4    emphasized phrase, as construed in its entirety, is that throughout the gelatin capsule, the claimed

5    "concentration" of water or water soluble flavoring is "present" in the capsule within the stated

6    ranges, as Defendants contend is the proper construction.[8]  *See* Joint Claim Construction

7    Statement (Docket No. 30), Ex. A at pp. 3-4.

8          Plaintiff seeks to avoid the ordinary meaning of its claim language by defining the terms

9    "present in" and "about" separate from the entire claim phrase.  Plaintiff separately defines

10   "present in" as "present **as part** of the capsule, as opposed to the fill," in order to circumvent the

11   limitation that the stated ingredients must be present throughout the gelatin capsule in the

12   specified "concentration."   Plaintiff's definition of "about" as "to within acceptable

13   manufacturing tolerances," improperly broadens the stated concentration ranges of water and

14   water soluble flavoring that Plaintiff would assert its patents cover.  In fact, nowhere in the

15   claims does the term "acceptable manufacturing tolerances" appear.  Plaintiff's attempt to

16   broaden the scope of its claims clashes with their ordinary meaning, and thus Defendants'

17   proposed construction should be adopted.

18   
19

**1.    The Intrinsic Record Requires That Water Soluble Flavoring Be Present Throughout the Gelatin Capsule**

20         Plaintiff attempts to ignore the intrinsic and extrinsic evidence and broaden the scope of

21   its claims by asserting that water soluble flavoring merely needs to be "present in" some portion

22   of the gelatin capsule.  This construction is improperly broad and utterly confusing.  Plaintiff's

23   construction is temporally vague and indefinite as to when, how, and what part of the gelatin

24   capsule one must measure to determine whether an infringing concentration of water or flavoring

25   is present.  Instead, the intrinsic and extrinsic record supports Defendants' construction.

26

27

28

[8]  As addressed below, Plaintiff attempts to undermine Defendants' construction by incorrectly implying that Defendants' use of "throughout the gelatin" means that Defendants' construction requires a "uniform distribution" limitation.  (See Plaintiff's Brief at p. 11).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF AND OPPOSITION TO PLAINTIFF'S BRIEF CASE NO. C-07-2385 MJJ**

1    Although not dispositive, the specification makes clear that the ingredients used to make

2    the gelatin capsules, including any flavoring, are heated and thoroughly mixed together.  (Baker

3    Decl., Ex. A, col. 3, ll. 28-34.)  Moreover, the specification does not contain any language stating

4    that the flavoring need only be present in "part" of the gelatin capsule, as Plaintiff would have it.

5    Given the lack of clarity provided by the claims and specification, the prosecution history

6    becomes critical to determine the proper construction.

7    The prosecution history confirms that the claims require that the ingredients be

8    distributed throughout the gelatin capsule in the stated concentration of the claims.  Plaintiff

9    repeatedly told the Examiner that the narrow acceptable ranges of water and water soluble

10    flavoring were never expressly stated in the prior art and that these ranges were critical to ensure

11    an even distribution of flavoring throughout the gelatin capsule.  For example, Plaintiff asserted

12    that "too little water . . . results in a distorted unpleasant taste, probably due to *uneven*

13    *distribution* or precipitation of flavoring materials," (Baker Decl., Ex. D, p. 5) and that "[o]verly

14    dried shells were also found to be unpalatable since the *water soluble flavoring is unevenly*

15    *distributed*. . . ."  (Baker Decl., Ex. H, p. 7 (emphasis added).)  The inventor himself even

16    declared to the Examiner that he "found that these harder capsules [(too little water)] were also

17    unpleasant to the taste because the flavor *was not evenly distributed in the capsule.*"  (Baker

18    Decl., Ex. I, p. 3 (emphasis added).)  Per Plaintiff's own admissions, the '231 and the '879

19    patents' claims require that the water soluble flavor be more than just "present as part of the

20    capsule," as Plaintiff now proposes, but that the flavor *must be distributed throughout the*

21    *capsule* in the concentration specified, as Defendants propose.

22    Further, Plaintiff argued that "[t]he major distinction of the instant invention is inclusion

23    of flavoring *in the gelatin capsule shells* of a capsule filled with fish oil to promote palatability

24    of the fish oil in a capsule filled with fish oil."  (*See* Baker Decl., Ex. L at p. 2 (emphasis in

25    original).)  In addition, Plaintiff asserted that the prior art "does not disclose a range of

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    concentrations for the flavoring *in gelatin capsule shells*." (*Id*. at p. 3 (emphasis added).)[9]  Thus,

2    there is no basis to stretch the plain claim language to cover such concentrations only in "part" of

3    the gelatin capsule.

###### a.    Plaintiff fails to show that water and water soluble flavoring do not have to be present throughout the gelatin capsule

6    Plaintiff misinterprets Defendants' proposed construction and misconstrues the intrinsic

7    record to support its construction that water and water soluble flavoring only need to be present

8    in "part" of the gelatin capsule, rather than throughout the capsule.    First, Plaintiff

9    advantageously assumes that Defendants' construction requires "uniform distribution" in order to

10    disregard it as impractical due to the nature of gelatin capsules.  (Plaintiff's Brief at pp. 12-13).

11    To be clear, Defendants' proposed construction that water and water soluble flavoring must be

12    "present throughout the gelatin capsule shell in the concentration specified" does not require that

13    there must be "uniform distribution" as Plaintiff asserts.  (Plaintiff's Brief at p. 11).    Rather,

14    Defendants' construction requires that the water and water soluble flavoring be mixed into the

15    gelswatch so that it is throughout the gelatin capsule in the concentration ranges claimed. (*See*

16    Declaration of Donald R. Steele in Support of Defendants' Claim Construction Brief ("Steele

17    Decl.").

18    Second, Plaintiff offers no intrinsic evidence to support its assertion that "present in"

19    should be construed as "present as *part* of the capsule shell, as opposed to the fill."  Nor does

20    Plaintiff provide intrinsic support for its assertions that "there is no requirement that [water and

21    water soluble flavoring be] present throughout the capsule," that "all that is required is that the

22    proper materials are present in the proper proportions," and that the claims also cover gelatin

23    capsules containing "layers or sections of materials."    (Plaintiff's Brief at p. 12).    These

24    assertions are further undermined by Plaintiff's clear admissions during prosecution.    As

25
26
27

----

[9] Extrinsic evidence further confirms Plaintiff's representations to the Examiner that the water soluble flavoring in the gelatin must be distributed throughout the capsules in the identified concentrations.  Wilkinson's article entitled "Softgels: Manufacturing Considerations" stresses the importance of efficient mixing and blending of the ingredients in the gelswatch prior to encapsulation.  (Baker Decl., Ex. G, pp. 423-25.)

28

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ**

1   previously addressed, in differentiating the prior art, Plaintiff repeatedly told the PTO that an

2   even distribution of water and water soluble flavoring was important to make the claimed

3   capsules palatable.  Tellingly, Plaintiff failed to address these glaring admissions in its brief.  In

4   fact, Plaintiff cites a portion of the prosecution history to support the notion that "the additives,

5   such as a water-soluble flavoring, can migrate, or move around" and ignores that in the very

6   same paragraph, Plaintiff admitted that the preferred ranges ensure an even distribution of

7   flavoring.  (Plaintiff's Brief at p. 13); (Baker Decl., Ex. D, p. 5).

8          Moreover, the use of identical language in the claims with respect to both "water" and

9   "water soluble flavoring," *viz.,* "wherein said water [or water soluble flavoring] is present in said

10  flavored gelatin capsule in a concentration which is in the range of about . . ." requires

11  consistency between the construction of this language with respect to both "water" and "water

12  soluble flavoring."  Thus, Plaintiff's construction means that ***water***, like water soluble flavoring,

13  need not be present throughout the capsule, but may instead be present as "***layers or sections of***

14  ***materials***."  (Plaintiff's Brief at p. 12).  The logical result of accepting Plaintiff's construction is

15  that all of the water in the gelatin shell could be on the outside of the shell, the inside of the shell,

16  or in one section of the shell – a result which is entirely inconsistent with the nature of a soft

17  gelatin capsule.  (Steele Decl.).

18         Third, Plaintiff resorts to incorrectly asserting that the specification and prosecution

19  history fail to describe the limitation in Defendants' construction, and that the intrinsic evidence

20  does not support "the nature of how the capsule comprises the water soluble flavoring."

21  (Plaintiff's Brief at p. 12., 15-16).  These arguments are clearly undermined by Plaintiff's glaring

22  admissions regarding the need for even distribution.   In addition, Plaintiff's assertions that

23  Defendants' construction was improperly imported from a specific embodiment in the

24  specification, or that it was inferred from the method claimed in Claim 16 of the '231 Patent are

25  equally unimpressive and irrelevant given Plaintiff's admissions.  (Plaintiff's Brief at p. 11-12).

26  In any event, as all the foregoing reliance on the claim language, the specification and the

27  prosecution history shows, the charge lacks merit.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

1    As such, Defendants' construction that water and water-soluble flavoring must be

2  "present throughout the gelatin capsule shell in the concentration specified by the claims"

3  comports with the plain meaning of the claims and should be adopted by the Court.

4        **2.     The Claim Language Limits Plaintiff's Claims to the Stated Ranges of Water, Water Soluble Flavoring, and Gelatin Softener**

5        The prosecution history of the two patents also confirms that the concentration ranges in

6  the claims are narrowly construed rather than open to interpretation based upon a vague measure

7  of "acceptable manufacturing tolerances" as Plaintiff argues "about" should be construed to

8  mean.  In addition to not mentioning "acceptable manufacturing tolerances" in the claims or

9  specification, in order to overcome rejections by the PTO, Plaintiff repeatedly told the Examiner

10 that its claimed invention was distinguishable from the prior art because of the specific

11 concentration ranges of the ingredients in its gelatin.  Explicit statements made by a patentee

12 during prosecution that distinguishes its claimed invention over prior art narrow the scope of a

13 claim.  *See, e.g., Ballard Med. Prods.*, 268 F.3d at 1361-62.  Plaintiff is estopped from now

14 asserting that the use of "about" allows its claims to cover concentration ranges beyond that

15 which it expressly amended and limited its claims to cover.

16       Specifically, Plaintiff distinguished two pieces of prior art, the Coapman '961 patent, and

17 the Brox '988 patent, by stressing the criticality of having the claimed range of 6% to 10% water

18 in the gelatin shell and that this range fell directly between these two patents, which claimed

19 "above 15% water" and "0% water," respectively.  (*See* Baker Decl., Ex. D, p. 4-5;  Ex. H, p. 5-

20 7; Ex. J.)  Plaintiff represented to the Examiner that the Coapman and Brox references "would

21 not have been helpful in producing palatable fish oil capsules, and in fact would have led an

22 investigator away from the correct parameters (6% to 10% water).  (Baker Decl., Ex. H, p. 7

23 (underlining in original).)

24       Plaintiff also repeatedly asserted to the Examiner that the acceptable range of water

25 soluble flavoring was 0.5% to 1.5% of the total weight of the gelatin capsule.  Plaintiff

26 represented that its palatable fish oil capsules required "a narrow range of flavoring

27 concentrations," and that "palatability was improved in a very narrow range between 0.5% and

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ**

1    1.0%, and that at 1.5% flavoring concentration there was a harsh after-taste *and a very soft*

2    *capsule*." (Baker Decl., Ex. H, pp. 6-7.)  Plaintiff further represented that "*[t]he prior art did*

3    *not recognize the importance of these variables*" as a means to distinguish other flavored gelatin

4    capsules. (*Id*. at p. 7.)

5           a.    **Plaintiff is estopped from asserting that its use of "about"**
6                 **allows it to cover gelatin capsules containing water or water-**
7                 **soluble flavoring beyond the concentrations specifically**
                  **claimed**

8           Plaintiff is incorrect that its use of "about" as it relates to the acceptable concentrations of

9    water and water-soluble flavoring supports that the proper construction of "about" is "acceptable

10   manufacturing tolerances."  Plaintiff fails to cite any intrinsic or extrinsic evidence that would

11   allow its claims to cover gelatin capsules with water and water-soluble flavoring concentrations

12   outside the ranges of 6-10% and 0.5-1.5%, respectively.   Moreover, Plaintiff ignores the

13   numerous amendments and specific limitations that it put into the claims in order to overcome

14   several rejections and obtain the patents-in-suit.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo*

15   *Kabushiki Co.*, 234 F.3d 558, 569 (Fed. Cir. 2000).  In fact, Plaintiff did not use the term "about"

16   in its initial filed claims of a gelatin capsule comprising "above 0.5 parts by weight of a water

17   soluble flavoring."  Thus, it is disingenuous for Plaintiff to now assert that its affirmative use of

18   "about" in only a select few claims was purposefully done to add breadth to its claims.

19   (Plaintiff's Brief at p. 17-18).

20          Plaintiff's argument that Defendants' construction writes "about" out of the claims

21   altogether is unavailing given that prosecution history estoppel commands that Plaintiff's claims

22   are strictly limited to the stated ranges.  *See Festo*, 234 F.3d at 569.  Without the clearly defined

23   and specific boundaries that Plaintiff is estopped from overstepping, the public would be unable

24   to determine whether their products would infringe the asserted claims.

25          Consideration of all of the evidence – the claims, specification, and prosecution history –

26   make it clear that Plaintiff cannot expand the scope of the claims beyond the specified

27   concentration ranges.  Nor can its claims cover flavored gelatin capsules in which the flavoring is

28   not distributed throughout the gelatin capsule in the identified concentrations, such as capsules

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ**

1    with coating or spray-on flavoring.  Defendants' construction comports with the plain and
2    ordinary meaning of the claim terms and should be adopted.

3    **V.     THE SECONDARY CLAIM CONSTRUCTION DISPUTES**

4         This Court need only construe those terms that are in controversy, and "only to the extent
5    necessary to resolve that controversy."  *Vivid Technologies, Inc. v. American Science &*
6    *Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).  While the following terms are technically
7    in dispute (*i.e.*, the parties did not agree to a stipulated construction), none of these construction
8    disputes greatly affect the infringement, validity, or enforceability of the '231 and '879 patents
9    that the parties have disclosed under the Patent Local Rules.

10        **A.     GELATIN SOFTENER**

11        This claim term is present in all of the asserted claims of both the '231 and '879
12   patents.  (Baker Decl., Ex. A, col. 5, l. 19; Ex. B, col. 4, l. 37.)  Defendants construe "gelatin
13   softener" to mean a softener or plasticizer.  Plaintiff's construction states: "'Gelatin Softener'
14   also known in the industry as a 'plasticizer' means 'a compound used to make the gelatin capsule
15   more flexible, specifically including glycerol, sorbitol and other polyols.'"  The listing of the
16   specific examples by Plaintiff is unnecessary to the claim.

17        **B.     PALATABLE, PALATABILITY**

18        "Palatable" is present in all of the asserted claims of the '231 patent;
19   "palatability" is present in all of the asserted terms of the '879 patent.  The plain and ordinary
20   meaning of "palatable" is "acceptable to the taste," and of "palatability" is "the quality of
21   acceptability to the taste."  Plaintiff's proposed construction of "palatable" as "having a pleasant
22   or acceptable taste" is an attempt to impose additional limitations into the claims that are
23   contradicted by the specification.  Plaintiff's additional requirement that palatable mean
24   "pleasant" is improper and indefinite given that the specification states that taste is purely
25   subjective.  (*See* Baker Decl., Ex. A, col. 1, ll. 20-30).

26        Plaintiff has cited nothing in the intrinsic record or extrinsic evidence to support its
27   proposed construction of this term.  Moreover, Plaintiff's misinterpretation of the prosecution
28   history does not support its construction of "palatable."  (Plaintiff's Brief at p. 21)  The portion

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ

1   of the prosecution history that Plaintiff cites actually states that too little water in the gelatin

2   capsule "results in a distorted unpleasant taste, probably due to uneven distribution or

3   precipitation of flavoring materials." (Baker Decl., Ex. D, p. 5)

4       The Court should therefore construe "palatable" and "palatability" in accordance with

5   their ordinary meaning, as proposed by Defendants.

6       **C.    GELSWATCH**

7       This term is found in only one of the asserted claims, Claim 16 of the '879 patent.

8   Defendants construe "gelswatch" in accordance with its ordinary meaning and the prosecution

9   history, *i.e.*, "a mixture of gelatin, gelatin softener, water and any additional components of the

10  gelatin capsule shell." Joint Claim Construction Statement (Docket No. 30), Ex. A at p. 6. For

11  instance, the inventor's October 8, 2000, declaration included a document stating that "[t]he gel

12  used for making the gelswatches consists of gelatin, glycerol and water." (Baker Decl., Ex. I

13  (NOR 0000087).) In contrast, Plaintiff has provided no evidence, either intrinsic or extrinsic,

14  that supports its proposed construction of "a mass of mixed shell ingredients ready for use in the

15  encapsulation of the fill material, typically formed in sheets or ribbons."[10]

16  **VI.    CONCLUSION**

17      For the reasons above, Defendants respectfully request that the Court adopt Defendants'

18  constructions of the disputed claim terms.

19  DATED:    _____February 18, 2008_____          MCDERMOTT WILL & EMERY LLP

20

21                                          By:    _____/s/ William G. Gaede, III_____

22                                                 William G. Gaede, III

23                                          Attorneys for *J.R. Carlson Laboratories,
                                            Inc. and Metagenics, Inc.*

24

25

26

27  _____
    [10] Plaintiff has agreed to using Defendants' construction of "gelswatch." (Plaintiff's Brief at p.
28  21).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' CLAIM CONSTRUCTION BRIEF
AND OPPOSITION TO PLAINTIFF'S BRIEF
CASE NO. C-07-2385 MJJ