# Exhibit H
# to Baker Declaration In Support of Defendants' Claim Construction Brief




RECEIVED
OCT 20 2000
TECH CENTER 1600/2900

In the United States Patent and Trademark Office

Applicant: Joar Opheim
Serial Number: 09/416017
Filed: Oct. 6, 1999
Title: Flavored Gelatin Capsule and Method of Manufacture
Examiner: Isis Ghali
Group Art Unit: 1615

Amendment B

This amendment is being submitted as a preliminary amendment with a Continuing Prosecution Application to the above captioned application.

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

This amendment is submitted as a preliminary amendment to a Continuing Prosecution Application in response to the Office Action mailed on July 17, 2000, with a response due October 17, 2000. Applicant requests that the application please be amended as follows:

IN THE CLAIMS:

Please cancel pending claims 1-24 in their entirety, without prejudice or disclaimer to the subject matter contained therein, and substitute claims 25-47 as follows:

25. A fish oil capsule for palatable presentation of fish oil comprising:
   a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and said water soluble flavoring is present in said gelatin capsule in a concentration greater than about 0.50 %; and
   b) a fish oil dose, said gelatin capsule encapsulating said fish oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

26. The fish oil capsule claimed in claim 25, wherein said gelatin capsule comprises between 10 and 35 percent of said gelatin softener, and said gelatin softener comprises at least one polyol, said polyol chosen from the group consisting of glycerol and sorbitol.

27. The fish oil capsule claimed in claim 26 further comprising an oil soluble flavoring, wherein said oil soluble flavoring is dissolved in said fish oil dose.

28. The fish oil capsule claimed in claim 26, wherein said water soluble flavoring is present in a concentration between about 0.50 % and about 1.50 % of said gelatin capsule.



29. The fish oil capsule claimed in claim 27, wherein said water soluble flavoring is present in a concentration between about 0.5% and about 1.0% of said gelatin capsule.

30. The fish oil capsule claimed in claim 28, wherein said water soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple.

31. The fish oil capsule claimed in claim 29, wherein said water soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple.

32. The fish oil capsule claimed in claim 30, wherein said water soluble flavoring comprises Firmenich strawberry flavor #52311A.

33. The fish oil capsule claimed in claim 30, further comprising an oil soluble flavoring, wherein said oil soluble flavoring is dissolved in said fish oil dose.

34. The fish oil capsule claimed in claim 31, wherein said water soluble flavoring comprises Firmenich strawberry flavor #52311A.

35. The fish oil capsule claimed in claim 31, wherein said oil soluble flavoring is preent in a concentration between about 0.5% and about 1.0% of said fish oil dose.

36. The fish oil capsule claimed in claim 33, wherein said oil soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple.

37. The fish oil capsule claimed in claim 35, wherein said oil soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple.

38. The fish oil capsule claimed in claim 36, wherein said oil soluble flavoring is present in a concentration between about 0.5% and about 1.0% of said fish oil dose.

39. The fish oil capsule claimed in claim 37, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of EPA and DHA.

40. The fish oil capsule claimed in claim 38, wherein said fish oil dose comprises at least one Omega-3 fatty acid chosen from the group consisting of EPA and DHA.

41. A fish oil capsule for palatable presentation of fish oil comprising:

a) a gelatin capsule, said gelatin capsule comprising gelatin, a gelatin softener, water, and a water soluble flavoring, wherein said water is present in said gelatin capsule in a concentration between about 6 % and about 10 %, and said water soluble flavoring is present in said gelatin capsule in a concentration between about 0.25% and about 0.50 %, and wherein said gelatin capsule comprises between 10 and 35 percent of said gelatin



NOR 0000069

softener, and said gelatin softener comprises at least one polyol, said polyol chosen from the group consisting of glycerol and sorbitol; and

b) a fish oil dose, said gelatin capsule encapsulating said duel oil dose, whereby said fish oil capsule is a palatable fish oil composition which promotes ingestion of the fish oil.

13 42. The fish oil capsule claimed in claim 41, wherein said fish oil dose has a concentration of Omega - 3 fatty acids above about 80%.

14 43. The fish oil capsule claimed in claim 42, wherein said water soluble flavoring is chosen from the group consisting of berry, strawberry, chocolate, cocoa, vanilla, lemon, nut, almond, cashew, macadamia nut, coconut, blueberry, blackberry, raspberry, peach, lemon, lime, mint, orange, banana, chili pepper, pepper, cinnamon, and pineapple.

15 44. The fish oil capsule claimed in claim 43, further comprising an oil soluble flavoring, wherein said oil soluble flavoring is dissolved in said fish oil dose.

B' cont'd. 16 45. A process for forming a fish oil capsule for palatable presentation of fish oil, comprising the steps of:

a) combining gelatin, a gelatin softener, water, and a water soluble flavoring;

b) forming a gelswatch by heating, melting an mixing said gelatin, said gelatin softener, said water and said water soluble flavoring;

c) forming a flavored capsule comprising a gelatin capsule encapsulating a fish oil dose with a portion of said gelswatch; and

d) drying said flavored capsule to produce a water concentration in said gelatin capsule which is between about 6 % and about 10 %, and a water soluble flavoring concentration in said gelatin capsule above about 0.25 %.

17 46. The process described in claim 45, wherein the water soluble flavoring is present in a concentration of between about 0.25 % and about 1.25 % of said gelatin capsule, and wherein an oil soluble flavoring is dissolved in said fish oil dose.

18 47. The process described in claim 45, wherein the water soluble flavoring is present in a concentration of between about 0.25 % and about 1.0 % of said gelatin capsule, and wherein an oil soluble flavoring is dissolved in said fish oil dose.

## REMARKS

The last Office Action mailed on July 17, 2000 has been carefully considered, and the claims have been amended to more clearly define the patentability of the applicant's invention over the prior art. In particular note that the invention now expressly defines encapsulated fish oil as a component of the invention (see claims 25, 41, and 45 which correspond to former claims 1-3, 7, 16, and 17) and particular critical ranges of flavoring concentrations have been added (see claims 28, 29, 41, 46 and 47) corresponding to the preferred embodiments in the application. Also, applicant is providing evidence documenting criticality of the water ranges and flavoring ranges claimed.

Rejection of claims 1-3, 7, 16, 17-20, and 23-24 as being unpatentable in view of Coapman, US 5,141,961 ('961) in view of Brox, US 4,744988 ('988) - These claims now correspond to new claims 25-29, 33, 35, 38, 41-42, 44 and 45-47.

Applicant now believes that the claims as rewritten define patentably over these references and any combination thereof and respectfully requests reconsideration of the rejections and allowance of the new claims based the following arguments:

1. The is no suggestion in the references themselves or in the prior art separate from the applicant's disclosure to combine the references as suggested.
2. It is improper to combine references where the references teach away from the combination, or if a proposed modification renders the primary reference unsuitable for its intended purpose. Coapman teaches away from the drying proposed by Brox, and modifying the Coapman capsule according to Brox renders Coapman unsuitable for its intended purpose.
3. Even if Coapman or Brock are combined as suggested, they do not teach, either alone or in combination, applicant's palatable flavored fish oil capsule as claimed and do not place the subject matter needed to practice the invention within the public domain before the date of applicant's invention.
4. The prior art teaches away from the applicant's invention with respect to the critical parameter of water concentration in the capsule shell. The prior art would lead to values which do not produce a palatable fish oil capsule.
5. The amount of flavoring needed to produce a palatable shell is unanticipated from the prior art and produces acceptable results in a surprisingly narrow range that would lead a person to reject the invention without finding the proper range.
6. Since the prior art has been available for over eight years, and the need for a palatable fish oil delivery system has been well recognized for at least that long, the failure of others to invent the applicant's invention is itself evidence of nonobviousness.

Applicant is providing with this amendment two Rule 132 declarations, Exhibits 1 and 2 which provide evidence of the criticality of the concentrations of flavoring and water in the gelatin capsule of the present invention related to producing a palatable flavored fish oil capsule.

Prior to discussing the above arguments for patentability specifically with respect to the claims, applicant will discuss the references and their general distinction from the applicant's invention, followed by a discussion of the criticality of the concentrations of flavoring and concentration of water in the gelatin capsule in terms of the Rule 132 Declarations.

Discussion of the references and distinctions of applicant's invention from them

Coapman teaches quick dissolving soft gelatin capsules encapsulating a highly concentrated solution in polyethylene glycol of a difficultly soluble pharmaceutical active. The soft gelatin capsule comprises from about 20 to 60% gelatin, 10 to 35% plasticizer (polyols) and 15 to 50% water (preferably 25 to 40% water) and optionally colorings and flavorings. The difficultly soluble pharmaceutical is prepared by dissolving it in a solvent and polyethylene glycol, and then evaporating most but not all of the solvent, producing a





concentrated solution of the pharmaceutical ingredient in polyethylene glycol. Among a shopping list of difficultly soluble pharmaceuticals are listed nutritional supplements (such as vitamins, minerals, fatty acids, amino acids, and the like).

Coapman also teaches that water is an *essential* component of the soft gelatin shells, because water is believed to aid in the rapid dissolution or rupture of the soft gelatin shell upon contact with the gastrointestinal fluids encountered in the body. Coapman teaches a shell which comprises about 15 to 50% water preferably 25 to 40% and most preferably about 30 to about 40% water (see col. 9, lines 25 to 36 and col. 10, lines 15-21).

Brox ,on the other hand, teaches a highly stable gelatin capsule which has long term resistance to attack by the polyethylene glycol filling but involving a much more dilute concentration of a pharmaceutical than Coapman. The Brox highly stable capsule shells are dried after filling. Brox teaches that during the drying of the capsules the water contained in the wall of the wet capsule normally does not completely vaporize, but rather a small proportion of water will normally also pass into the filling (see col. 5, lines 20-23). By the combination of vaporization and water drawn into the filling Brox's capsule shells are completely dry.

Both Coapman and Brox include polyethylene glycol - 600 (a semi-solid solvent) as the principal ingredient in the filling producing a solution of their pharmaceutical active. In fact the gelatin shell of Brox is a shell particularly suited to contain polyethylene glycol for long term stability.

The present invention produces a palatable fish oil capsule with fish oil encapsulated in a flavored soft gelatin capsule. (Please note that in the present application "gelatin capsule" corresponds to the capsule shell in Coapman and Brox.) The flavored gelatin capsule comprises gelatin, gelatin softener, water and water soluble flavoring. The fish oil is preferably also flavored with an oil soluble flavoring. The gelatin capsules in the present invention are particularly suitable for encapsulating a dose of fish oil <u>as such</u> in a palatable presentation, as distinguished from a pharmaceutical dissolved in polyethylene glycol, which may include fatty acids as in the prior art. The important features of the applicant's invention are the combination of:

1. a soft gelatin capsule flavored with a water soluble flavoring
2. a particular concentration of the water soluble flavoring in the gelatin capsule (generally greater than 0.5% and preferably between about 0.5% and a little more than 1.0%),
3. a particular water concentration in the gelatin capsule between about 6% and 10%,
4. fish oil encapsulated in the gelatin capsule,
5. preferably an oil soluble flavoring dissolved in the fish oil (preferably 0.5 - 1.0% flavoring).

Many of these features are antithetical to the prior art. In particular, the water concentration (about 6% to about 10% of the gelatin capsule) is neither greater than 15%





as required for Coapman's quick dissolving capsule or 0% as in Brox's stable capsule. It will be shown, below, that water concentration is of critical importance to a palatable fish oil capsule because failure to maintain the proper concentration results in spoilage of the fish oil or an unpalatable shell. The prior art also does not teach a flavoring concentration. It will be shown that the range of concentrations of flavoring is important to the palatability of fish oil capsules. It is revealing that the prior art does not teach about an oil soluble flavoring in the capsule filling, since both Coapman and Brox teach dissolving their pharmaceutical in polyethylene glycol which is water soluble. It is likewise revealing that the prior art does not necessarily even teach fish oil as such in the optionally flavored capsules, but rather Coapman only refers to fatty acids and amino acids which could come from other sources and do not have the palatability issues attendant with fish oil itself. The applicant's invention is directed particularly to a palatable fish oil capsule.

It is very important to note that neither Coapman nor Brox is addressing a capsule where the flavoring in the capsule plays a part in improving the palatability of the active ingredients. This is clear because both references refer to an advantage of soft gelatin capsules being "easy to swallow" (Coapman col. 1, line 27; and Brox col. 1, line 21). Brox goes on to note other advantages of gelatin capsules as their being "odorless and tasteless" (ibid.)

Importance of the water concentration and flavoring concentration in the applicant's invention and results unanticipated from the prior art deriving therefrom

Reference is now made to Exhibit 1, a Rule 132 Declaration by the applicant, Joar Opheim, and to Exhibit 2, a Rule 132 Declaration by Hennie van Duynhoven, manager of product formulations for Banner Pharmacaps Europe who produces the flavored fish oil capsules for the applicant.

Exhibit 1 is a Rule 132 declaration by the inventor, Joar Opheim which summarizes the development of the applicant's invention. In particular, the inventor relates his experience that producing a palatable fish oil capsule involves providing a pleasant tasting capsule and a capsule which protects the fish oil from exposure to oxygen. The first feature is important to establish a pleasant taste when a capsule consume bites into the capsule, while the second feature relates to avoiding development of the characteristic "fishy" odor which is not coexistent with a palatable fish oil product. The inventor also relates that palatability was further improved by adding flavor to the fish oil itself.

The inventor further relates that he tested a wide variety of natural flavorings and found that there were many very reasonable flavoring concentration levels which did not produce an acceptable or consumable gelatin capsule, for instance flavoring concentrations above about 5%. He also found that all the flavorings tested provided an acceptable presentation which improved the palatability of the fish oil capsule within a surprisingly narrow range between about 0.5 and 1.5%. A typical example of the experimentation is provided in Table 1 of the exhibit which is the final test panel for establishing the preferred concentration of a strawberry flavoring, Firmenich 52311. Table 1 of Exhibit 1 shows that





palatability was improved in a very narrow range between 0.5% and 1.0%, and that at 1.5% flavoring concentration there was a harsh after-taste *and a very soft capsule.* The prior art does not provide any indication that only a narrow range of flavor concentrations improves the palatability of fish oil, and in particular that flavoring levels as low as 1.5% would result in an *unacceptably soft shell* (impact of shell hardness discussed below). The inventor relates that these results were surprising and required extensive experimentation because there was no prior experience in making flavored gel caps, even though he was utilizing experienced personnel from the world's second largest manufacturer of soft gelatin capsules (Banner Pharmacaps).

The inventor further relates in his declaration that he found by trial and error that the exposure to oxidation of the fish oil is related to the "hardness" of the flavored capsules. To assure that fish oil would not deteriorate he found that a hardness corresponding to water concentration in the gelatin capsule between about 6% and 10% for flavoring concentrations around 1%. In particular, he learned that when the concentration was too high (above about 12% water in the capsule shell) the shell was too soft and the fish oil took on an unacceptable "fishy" odor and taste in less than eight months of storage. It is believed, that this relates to diffusion of oxygen into the fish oil through the shell. Too low of a water level (less than about 3%) was also undesirable, presumably due to development of tiny cracks which allowed exposure to oxygen. Overly dried shells were also found to be unpalatable since the water soluble flavoring is unevenly distributed, presumably due to the precipitation of the water soluble flavoring, resulting in unpalatability.

In summary, the unexpected results which were not predicted by the prior art, were that a palatable fish oil capsule requires a narrow range of flavoring concentrations, between about 0.5% and 1.5% for a wide range of natural flavorings, and the requirement for using a narrow range of water content in the capsule shell, between about 6% and 10%. *The prior art did not recognize the importance of these variables and they could only be learned by long experimentation such as was performed by the inventor.*

Comparing the applicant's results to the prior art cited, the data provided in Exhibit 1 show that the teachings in the prior art, Coapman's quick dissolving capsules (>15% water) or Brox's stable capsule (0% water), even though presumably valuable for their own purposes, would not have been helpful in producing palatable fish oil capsules, and in fact would have led an investigator away from the correct parameters (6% to 10% water).

No direct comparison is possible with respect to flavoring level in the capsule shell, since no flavoring level was taught in the prior art. However there is no teaching of the surprisingly narrow range of flavoring levels which produce palatable fish oil capsules. The prior art does not teach the preferred feature of adding oil soluble flavoring to the shell contents.

Exhibit 2, is a declaration by Hennie van Dynhoven, manager of Product formulations for Banner Pharmacaps Europe which is the second largest producer of soft gelatin capsules



in the world and which produces the flavored fish oil capsules for the applicant. The declaration attests to the criticality of the water concentration in the shell to protect the fish oil. Mr. Van Dynhoven also states that Banner has not produced flavored fish oil capsules other than for the applicant, and that based on his knowledge of the industry, he is not aware of their production by other manufacturers.

Specific Arguments for Patentability of the Claims

1. Argument 1 - The is no suggestion within Coapman and Brox or in the prior art separate from the applicant's disclosure to combine the references as suggested. - Relevant to all claims

The mere fact that references can be combined or modified does not render the combination obvious unless the prior art also suggests the desirability of the combination. *In re: Mills*, 916 F.2d 680, 16 USPQ2d 1430 (Fed. Cir. 1990). Combining prior art references without evidence of such a suggestion, teaching or motivation, simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability - the essence of hindsight. Ecolochem, Inc. v. Southern Cal. Edison Co., ___F.3d___, Docket 99-1043 (Fed. Cir. 2000).

The motivation identified in the first Office Action was the teaching of Brox that during drying, the water contained in the wall of the wet capsule does not completely vaporize. However as pointed out above this statement is not a motivation to modify Coapman to get to the applicant's invention (a palatable fish oil capsule with a water concentration in the shell of about 8%), but rather just an observation that during the drying of Brox a small amount of water is unavoidably drawn into the filling during drying. At the conclusion of drying Brox's shells always contain exactly zero water. (See col. 5, 20-26 and col. 6, lines 18-25 and 58-63 and col. 7 lines 30-36). Applicant respectfully submits that there is no motivation apart from his disclosure to modify Coapman by Brox to learn that drying gelatin capsules to 8 ± 2% water is important for producing a palatable flavored fish oil capsule.

2. Argument 2 - Coapman teaches away from the drying of Brox, and modifying the Coapman capsule according to Brox renders Coapman unsuitable for its intended purpose. Also, Brox teaches away from the use of flavoring. Relevant to all claims.

References cannot be combined where the references teach away from their combination. (See *In re Grasselli*, 713F.2d.731, 743, USPQ 769,779 (Fed. Cir. 1983) and *MPEP* 2145). As a corollary, if the proposed modification would render the prior art unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification. *In re Gordon*, 733F.2d.900, 221USPQ 1125 (Fed. Cir. 1984) and *MPEP* 2143.01.

Coapman teaches a quick dissolving capsule where "the soft gelatin shells of the instant invention comprise water as an essential ingredient" because the water is believed to aid in rapid dissolution of the shell on contact with gastrointestinal fluids. Water content comprises about 15% to about 50% water (col. 9, 25-36 and col. 10, 15-21)

Brox teaches an extremely stable capsule which is dried. "During the drying water in the wall of the capsule is not completely vaporize. Rather a small portion will also pass into





the filling." (col.5, 20-26). When the drying is complete no water remains in the shell (see dried shell compositions in examples col. 6, lines 18-25 and 58-63 and col. 7 lines 30-36, always exactly zero water).

Thus Coapman's teaching that water is an essential ingredient expressly teaches away from Brox's drying.

In the alternative, drying of the Coapman shells as taught in Brox, and removing the essential water ingredient, renders the Coapman invention unsuitable for its intended purpose, a rapidly dissolving capsule by removing an essential ingredient..

To the extent that Coapman teaches a flavored gelatin capsule, as relied on in the rejection, Brox teaches away from the combination when he sites the reasons for preferring gel caps as their being "odorless, tasteless, and easy to swallow" (ibid).

3. Argument 3 - Neither Coapman nor Brox, alone or in combination teaches applicant's palatable flavored soft gelatin capsule containing fish oil as such in the shell contents.- Relevant to all claims

For an obviousness rejection, the teaching in the references when combined must generally place the needed subject matter in the public domain before the date of the invention. *In re: Zenitz*, 333 F.2d 924, 142 USPQ 158, 160 (C.C.P.A. 1964).

The applicant's invention is directed towards a palatable flavored soft gelatin fish oil capsule. The rewritten claims expressly include the fish oil as such as part of the claimed invention. Both Coapman and Brox are limited to teaching capsule fillings which are an insoluble pharmaceutical dissolved in polyethylene glycol. Coapman references among a shopping list of difficultly soluble pharmaceuticals "nutritional supplements (such as vitamins, minerals, fatty acids, amino acids, and the like)". While fish oils include fatty acids and amino acids, the converse is not necessarily true, these components could come from other sources as well. This is a very important distinction, since the applicant's invention is directed to solving the particular problems associated with palatability of fish oil which are not present for other sources of fatty acids and amino acids such as vegetable oils.

Given that it is not clear that Coapman is even addressing fish oil as such in his capsules, applicant does not believe that the generic reference in Coapman to "optional components which can be incorporated into the soft gelatin shells includes colorings, flavorings, preservatives, anti-oxidants, essences, and other aesthetically pleasing components", coupled with Coapman's quick dissolving capsule and Brox's stable capsule both for pharmaceuticals dissolved in polyethylene glycol, placed applicant's invention of a palatable fish oil gelatin capsule in the public domain (there are no references to fish oil components or flavorings in Brox).

To begin with there would be no way to know from the prior art with reasonable chance of success that encapsulating fish oil in a flavored gelatin capsule would actually improve



the palatability. Second, if one started to experiment with flavored capsules, it is unlikely that one would come upon the right flavor concentration level and water concentration level without becoming discouraged. Considering that it takes extended testing to find the right flavoring and to water concentrations it is unlikely that the solution could be found without the more than eight months of testing that it took the applicant, a process which could hardly be considered obvious. The problem is more than mere routine optimization of ranges since:

1. There are two narrow numerical ranges which must be identified (flavoring and water content).
2. There is no teaching of the flavoring level in the prior art, and unacceptable levels are very close to those which produce palatable capsules ant to the preferred value.
3. The variables interact in that flavoring level affects shell hardness as well as palatability.
4. The prior art would lead away from choosing the proper water concentration in the shell (a value between zero and 15% as required by the applicant's invention, would not be acceptable to either reference), and there is no motivation to relate this variable to palatability of flavored fish oil capsules.

4. Argument 4 - Applicant's invention produces unexpected and superior results compared to the prior art which teaches away from the invention with respect to water content of the gelatin shell - Relevant to all claims

A prior art reference must be considered in its entirety, i.e., as a whole, including portions that would lead away from the claimed invention. *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 USPQ 303 (Fed. Cir. 1983) and *MPEP* 2141.02. Applicant has submitted evidence of unexpected criticality of the water concentration of the gelatin capsules of his invention with regard to maintaining the palatability of fish oil and the superior results obtained compared to the levels taught by the prior art (Coapman and Brox). In Exhibit 1, the applicant relates that he found that when flavored capsules were produced with too high a water content, greater than 12%, the fish oil contents developed an unacceptable "fishy" odor on long term storage and when the water content was too low, less than 3%, similar results were obtained. When the water concentration was too low, the capsules also had an unpalatable taste due to the flavor being unevenly distributed in the capsule. These findings compare directly to the prior art teachings of Coapman (water is an essential ingredient in the capsule shell and water content in the shell greater than 15%) and Brox (water content of 0% in the dried shell), both of which teach away from the applicant's invention if applied to the applicants fish oil capsule. Applicant respectfully argues that the teachings of Brox and Coapman away from his invention should therefore be considered as evidence of the nonobviousness of his invention.

5. Argument 5 - Applicant's invention produces unexpected results with respect to flavoring levels - Relevant to claims 28,29, 41, 46, and 47



The applicant has also provided evidence in Exhibit 1, as summarized above, that range of flavoring concentrations in the gelatin capsule which results in a palatable fish oil capsule is a surprisingly narrow one, between about 0.25% and 1.25% which correspond to applicant's preferred embodiments in the application. There are no flavoring concentrations mentioned in the prior art teachings to compare with. However, the narrowness of the range, the absence of guidance, and the extensive testing required to obtain a capsule which promotes palatability, argues against obviousness of the invention given the complete lack of indication in the prior art that that a flavored soft gelatin capsule would improve the palatability of fish oil.

6. Argument 6 - Failure of others to invent - Relevant to all claims
It is well known, even among the general public, that there is a need for a palatable fish oil supplement. Further, applicant supplied a declaration, by Dr. William Wright with Amendment A, attesting that the need was well known for many years. Yet, the references cited have been available for over eight years prior to the applicant's invention. Yet no references have been found to a flavored fish oil soft gel capsule. In addition, in Exhibit 2, Mr. van Nuyhoven declares that he knows of no flavored capsules for fish oil made by his organization or others prior to the applicant's filing date. Applicant argues that this in itself is evidence which should be considered as evidence that the invention is nonobvious over the prior art.

Rejection of claims 4-6 and 8-15, 21 and 22 as being unpatentable over Stella, US 5,874,418 in view of Story, US 5,738,871 and Garleb US 5,444,054. - These claims now correspond to new claims 30,31,32,34,36,37,39,40 and 43.

The above dependent claims deal with a listing of water soluble and oil soluble flavorings which are suitable for the invention and compositions of the fish oil in terms of EPA and DHA..

Stella et al. contains a large dictionary of terms including 'encapsulating agents" including gelatin, 'flavorants" and various types of "flavorants" including cinnamon, peppermint, or orange. Stella also defines "sweetening agents" including glycerin, and 'dietary supplements" which can include fish oils, and "active ingredients" which can include flavorings. However, Stella does not teach the use of the flavorants in capsule shells, nor does he include soft gelatin capsules.

Story teaches a hard gelatin capsule containing a fat soluble nutrient, including fish oil which contains EPA and DHA, and a liquid solvent (glycerol and water) used inside the capsule to provide a proper consistency. Garleb teaches using strawberry flavor (Firmenich) to flavor a composition which contains EPA and DHA without a capsule.

Argument 1 - Relevant to all claims - The above dependent claims are patentable for all the reasons sited for the independent claims on which they respectively depend.



Argument 2 - Relevant to claims 30,31, and 43- There is no teaching in the prior art, either alone or combined, to use these flavorings to flavor the shell in a fish oil capsule.

Conclusion

The applicant believes that the rewritten claims define patentability of the applicant's invention over the prior art for all the reasons argued above, and therefore respectfully requests reconsideration of the rejections in view of the amendments and the evidence and arguments submitted. Allowance of new claims 25 to 47 is respectfully requested.

Respectfully Submitted,

/Howard E Lebowitz

Howard E. Lebowitz
Registration Number 44,864
Agent for the Applicant
905 West Middlefield Road, No. 971
Mountain View, CA 94043
Telephone 650-964-0665