MCDERMOTT WILL & EMERY LLP
William G. Gaede III (136184)
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  (650) 813-5000
Facsimile:  (650) 813-5100

Attorneys for *J.R. Carlson Laboratories, Inc.
and Metagenics, Inc.*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORDIC NATURALS, INC.<br><br>    Plaintiff,<br><br>v.<br><br>J.R. CARLSON LABORATORIES, INC. and METAGENICS, INC.<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. C-07-02385 PJH<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DECLARATION OF DONALD R. STEELE** |

## I.   INTRODUCTION

Defendants J.R. Carlson Laboratories, Inc. and Metagenics, Inc. (collectively "Defendants") properly submitted a declaration from a person they previously disclosed as having relevant knowledge, Donald R. Steele, ("the Steele Declaration"), in support of their Claim Construction Response brief. The Steele Declaration appropriately describes how a person of ordinary skill in the art would understand the intrinsic evidence. (*See* Declaration of Brian L. Baker in Support of Opposition to Plaintiff's Motion to Strike Declaration of Donald R. Steele ("Baker Decl."), Ex A (the Steele Declaration) filed herewith.). The Steele Declaration was necessitated by several overreaching arguments that Plaintiff Nordic Naturals, Inc. ("Plaintiff")

1  made for the first time in its Opening Claim Construction Brief: (1) unsupported assertions about
2  what a person of ordinary skill in the art would consider; (2) claim construction arguments that
3  went well beyond the scope and plain meaning of its proposed constructions contained in the
4  Joint Claim Construction Statement; and (3) claim constructions and arguments that are in direct
5  conflict with the intrinsic record.

6  As such, the Court should deny Plaintiff's Motion to Strike, and should consider the
7  Steele Declaration as illustrative of how Plaintiff's positions are untenable in light of the intrinsic
8  record.

## II. ARGUMENT

### A. THE STEELE DECLARATION PROPERLY RESPONDS TO PLAINTIFF'S UNSUPPORTED ASSERTIONS ABOUT WHAT A PERSON OF ORDINARY SKILL WOULD UNDERSTAND, AND IS NECESSARY TO RESPOND TO NEW CLAIM INTERPRETATIONS FIRST PUT FORTH IN PLAINTIFF'S CLAIM CONSTRUCTION BRIEF

First, Plaintiff's assertion that Mr. Steele is not a person of ordinary skill in the art and does not opine on the skill level of one of ordinary skill in the art ignores Plaintiff's admissions to the PTO on this issue.[1]  Plaintiff argued to the PTO that a person of ordinary skill in the art for this invention would be "a person capable of *understanding* the recipes in the patent application, *formulating* a gelswatch to make flavored gel caps, and *processing* the gelswatch through an encapsulating machine, and drying the capsules" (emphasis added).  (Baker Decl., Ex.

---

[1] Despite Defendants' requests for all documents related to the prosecution of the patent applications leading to the patents-in-suit or related applications, to date Plaintiff has provided nothing more than copies of the file histories for the '231 and '879 Patents.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  D; page 8 (01/31/08 Response to the Office Action).)[2]  As made clear in his declaration, Mr. Steele has "approximately twenty years of experience in the research and development, formulation, and manufacturing of soft gelatin capsules." (Baker Decl., Ex. A.)  Mr. Steele clearly qualifies as a person of ordinary skill in the art according to Plaintiff's representation.

Second, the Steele Declaration refutes Plaintiff's repeated assertions in its claim construction brief that its proposed claim constructions comport with what a person of skill in the art would understand the terms to mean. Plaintiff, however, provided no support for these assertions.

Third, Plaintiff presented new assertions and claim limitations in its claim construction brief that were unapparent from the Joint Claim Construction Statement, and unsupported by evidence of what a person of skill in the art would believe the terms meant. Plaintiff asserted for the *first* time in its claim construction brief that the terms "[w]herein said water [or 'water soluble flavoring'] is present in said flavored gelatin capsule in a concentration in the range between about . . ." meant that its patent covered gelatin capsules that had "layers or sections" of water or water soluble flavoring in the capsule, in addition to capsules that had an even distribution of the water or water soluble flavoring.  This new assertion was not contained in or ascertainable from Plaintiff's proposed constructions put forth in the Joint Claim Construction Statement.[3]  (*See*

---

[2] Plaintiff's admissions were discovered by counsel for Defendants after a third party, Marine Nutriceuticals, produced documents on March 6, 2008, which prompted investigation into a patent application directly related to the patents-in-suit, the '231 and '879 Patents.  U.S. Patent Application No. 10/646,898 is a continuation of a continuation of the '879 Patent, which is a continuation of the '231 Patent, all assigned to Plaintiff.  All continuation applications have the same specification.  By accessing the US Patent and Trademark Office ("USPTO") website, Defendants discovered that Plaintiff had acknowledged to the USPTO that the claims in the 10/646,898 application are not patentably distinct from the claims in the '231 and '879 Patents.  Plaintiff's admissions during the prosecution of the 10/646,898 application regarding the meaning of claim terms and the definition of a person of ordinary skill in the art should bind Plaintiff to the same meaning for those claim terms and the same definition of a person of ordinary skill in the art in the '231 and '879 Patents.  *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 980 (Fed. Cir. 1999).

[3] Plaintiff asserted in the Joint Claim Construction that the term "[w]herein said water soluble flavoring [or 'water'] is present in said flavored gelatin capsule in a concentration which is in the range between. . ." did not need to be construed as a whole as it was clear from its plain meaning what it meant.  Plaintiff nonetheless defined this phrase as "[w]herein said water soluble flavoring [or 'water'] is present as part of said flavored gelatin capsule in a concentration which is in the range between. . . ."

1  Glore Declaration in Support of Plaintiff's Motion to Strike, Ex. C.)  Defendants cannot be
2  expected to foretell that Plaintiff would stretch the claim language so far.  Thus, to combat this
3  new and unsubstantiated assertion, Defendants timely submitted the Steele Declaration which
4  explained that ingredients in the gelatin capsule shell and gelswatch cannot be present in "layers
5  or sections of materials" and in fact, such an interpretation would be "inconsistent with the
6  requirement and nature of soft gelatin capsules."  (Baker Decl., Ex. A.)  Mr. Steele further
7  explained that an oil soluble flavored coating "that is applied to the exterior of a capsule after it is
8  formed and filled is not 'present in' the capsule shell . . . ."  (*Id*.)  Mr. Steele's Declaration
9  explains that a person of ordinary skill in the art would understand that water or water soluble
10  flavoring could not be present in the gelatin in "layers or sections" as asserted in Plaintiff's claim
11  construction brief.

12     Fourth, the intrinsic record supports Mr. Steele's statements, and viewed together, they
13  make clear that Plaintiff's constructions are untenable.  In its claim construction brief, Plaintiff
14  incorrectly asserted that the proper construction of "is present in said gelatin capsule in a
15  concentration" did not require that the ingredients of the gelswatch be uniformly or evenly
16  distributed.  However, as previously stated, Mr. Steele explained that having "layers or sections
17  of materials" in the gelswatch is inconsistent with the nature of soft gelatin capsules.  His
18  explanation is further supported by Plaintiff's own admission to the PTO that it is "important [to
19  obtain] an ***even distribution*** of the flavoring in the gelswatch from which the capsules are made . .
20  . ."  (Baker Decl., Ex. E (6/11/07 Response to Office Action, at p. 7).)  Furthermore, Mr. Steele's
21  declaration that oil-based flavoring applied to the exterior of a capsule would not infringe
22  Plaintiff's patents helps elucidate Plaintiff's own repeated admission that "essential oils" and
23  other flavors that are "insoluble in water" are ***not covered*** by its patents.  (*Id*. at pp. 6-7.)[4]  Thus,

---

[4] In Exhibit E Plaintiff stated that the claims "all call for **water soluble flavorings** and thus are mutually exclusive of [prior art] water insoluble flavorings.  The water solubility is important for obtaining an even distribution of the flavoring in the gelswatch from which the capsules are made . . ." (emphasis in original).

MPK 138807-1.062114.0123    - 4 -    OPPOSITION TO PLTF'S M/STRIKE
STEELE DECLARATION
CASE NO. C-07-02385 PJH

the Steele Declaration ensures that the Court fully understands the nature of Plaintiff's admissions in the intrinsic record and that it should not be stricken.

### B. MR. STEELE'S DECLARATION WAS PROPERLY ADMITTED AND PLAINTIFF CANNOT IDENTIFY ANY PREJUDICE CAUSED BY ITS INCLUSION INTO THE RECORD

Tellingly, Plaintiff failed to substantiate any harm caused by Defendants' inclusion of the Steele Declaration, including a failure to show harm caused prior to this Court's rescheduling of Plaintiff's due date for its Reply Brief in support of its claim construction. Contrary to Plaintiff's assertion that Defendants never previously disclosed Mr. Steele's identity, in fact, Plaintiff has known of Mr. Steele as a person with relevant knowledge of soft gelatin capsule manufacturing since August 15, 2007, when his name was provided in Defendant Carlson's Initial Disclosures. (*See* Baker Decl., Ex. F (Carlson's Initial Disclosures.).) Moreover, on October 30, 2007, Defendants produced to Plaintiff a statement by Mr. Steele describing his experience using flavoring in gelatin since the mid 1980's. (*See* Baker Decl., Ex. G (DEFCAR00000022-23).) Despite these disclosures, Plaintiff made no effort to inquire into Mr. Steele's knowledge and experience prior to its current motion to strike.

While Defendants deny that any harm was caused by the inclusion of the Steele Declaration under the previous briefing schedule, such claims of prejudice are now mooted by the new briefing schedule. Having received the Steele Declaration on February 18, 2008, and with its Reply Brief in support of its claim construction not due until April 16, 2008, Plaintiff has had ample time to depose Mr. Steele and/or respond to his declaration. As such, Plaintiff's Motion to Strike should be denied.

DATED: 20 March 2008          MCDERMOTT WILL & EMERY LLP

By: */s/ William G. Gaede, III*
William G. Gaede, III

Attorneys for *J.R. Carlson Laboratories, Inc. and Metagenics, Inc.*