1 | Behrooz Shariati (State Bar No. 174436)
2 | bshariati@jonesday.com
  | JONES DAY
3 | Silicon Valley Office
  | 1755 Embarcadero Road
4 | Palo Alto, CA  94303
  | Telephone:     650-739-3939
5 | Facsimile:     650-739-3900
6 | 
  | Attorneys for Plaintiff
7 | NORDIC NATURALS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **NORDIC NATURALS, INC.,** | Case No. C-07-02385 PJH |
| Plaintiff, | **PLAINTIFF NORDIC NATURALS, INC.'S  REPLY CLAIM CONSTRUCTION BRIEF** |
| v. | |
| **J.R. CARLSON LABORATORIES, INC. and METAGENICS, INC.,** | **Claim Construction Hearing Set for:** |
| Defendants. | Date:    April 30, 2008<br>Time:    9:00 a.m.<br>Before:  The Honorable Phyllis J. Hamilton |

**Table of Contents**

I.    Introduction ................................................................................................................. 1

II.   Flavoring and Sweeteners .......................................................................................... 1

   A.  "Sweet" is not a "flavor"..................................................................................... 1

   B.  Claim 3 does not expand Claim 1 to include sweeteners.................................... 1

   C.  Sweet softeners are not a substitute for flavoring ............................................... 2

   D.  The prosecution history distinguishes "Flavoring" from "Sweetener"............... 2

   E.  Defendants' extrinsic evidence contradicts their own construction.................... 3

       1.  Defendants' improperly attempt to combine definitions from their dictionary ........... 3

       2.  21 C.F.R. 172.585 supports Plaintiff's construction ......................................... 4

       3.  U.S. Patent 4,428,927 Treats Flavorings and Sweeteners as Distinct.............. 4

       4.  The Wilkinson reference Distinguishes Sugar from Flavoring........................ 5

       5.  Remington distinguishes Sweeteners from Flavors .......................................... 5

   F.  Plaintiff's extrinsic evidence confirms its proffered construction without contradicting or improperly modifying the claim terms........................................................................ 6

III.  Percentages Clauses ................................................................................................... 7

   A.  Importing limitations from the specification is improper ................................... 7

   B.  Defendants improperly import implied aspects of a specific embodiment......... 8

   C.  The Steele declaration applies the wrong standard ............................................ 8

   D.  The File Histories Support Plaintiff's Constructions.......................................... 9

   E.  Defendants mischaracterize how to test percentages ........................................ 11

   F.  "About" must have meaning ............................................................................. 12

IV.   Remaining Terms for Construction.......................................................................... 13

   A.  "Palatable" requires pleasant taste ................................................................... 13

   B.  Plaintiff stands on Opening Brief for remainder of terms ................................ 13

V.    Conclusion ................................................................................................................ 14

# Table of Authorities
Cases

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) .............................................. 13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kobushiki Co.*, 234 F.3d 558, 586 (Fed. Cir. 2000) ...... 13

*In re Gabapentin Patent Litig.*, 503 F.3d 1254,1263 (Fed. Cir. 2007) .......................................... 13

*Ortho-Mcneil Pharm., Inc., v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1327 (Fed. Cir., 2007) .................................................................................................................................................. 12

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005)(*en banc*), *cert. denied*, 546 U.S. 1170 (2006) .............................................................................................................................. 7, 11

*White v. Dunbar*, 119 U.S. 47, 51 (1886) ........................................................................................ 1

### I. INTRODUCTION

In their Opposition, Defendants fail to heed the often quoted admonition that the meaning of a claim cannot be twisted and turned, like a nose of wax, to suit their needs. (*See White v. Dunbar*, 119 U.S. 47, 51 (1886).) In order to limit certain claim elements, Defendants improperly attempt to limit the claims to the preferred embodiments and even attempt more restrictive definitions without an explicit abandonment or other valid reason for such limitations. For other elements, Defendants conversely argue for additional scope for almost unlimited breadth, in conflict with the specification and their own extrinsic evidence. Plaintiff, by contrast offers plain meaning definitions that are supported by the intrinsic and extrinsic evidence and that embrace the proper scope of the claimed invention.

### II. FLAVORING AND SWEETENERS

#### A. "Sweet" is not a "flavor"

Defendants attempt to enlarge the meaning of "flavoring" by arguing that anything that affects taste must be a flavoring. This assertion is contrary both to the common understanding of the term "flavor" and the usage of that term in the patents and intrinsic evidence. Sweetening fish oil does not change its flavor and gelatin with sweetener added has only gelatin flavor, only sweeter. Indeed, some of the prior art cited by the Defendants themselves contradicts their position by making a clear distinction between flavorings and sweeteners.

Defendants further contend that "[n]either patent contains claim language that excludes substances that sweeten from the claim term 'flavoring' and "flavored." (Defendants' Opposition at 6). This statement is wrong, since the term "flavoring" itself excludes sweetness, and in any event, there is no requirement that an inventor explicitly exclude every feature that is *not* covered in the claim, otherwise even the simplest claim would have to include thousands of exclusions. Both in the realm of every day experience, as well as the art of these patents, flavors such as lemon, strawberry, banana, cherry, grape, etc. are very different from sweeteners such as sugar, Saccharin, or Sorbitol.

#### B. Claim 3 does not expand Claim 1 to include sweeteners

Defendants attempt to rely on dependent Claim 3's listing of various flavorings to argue

that because that the scope of the term in Claim 1 is broader that that of claim 3, claim 1 must include sweeteners. The most obvious problem with this argument is that Claim 3 lists only 24 specific flavors, leaving thousands of remaining possible flavors (such as bubblegum, tangerine, grape, cherry, kumquat, piña colada, root beer, watermelon, etc.) that are within the scope of Claim 1 and not listed in Claim 3, without the need to resort to a sweetener to bolster the scope of Claim 1. (*See* Declaration of Behrooz Shariati in Support of Plaintiff Nordic Naturals, Inc.'s Opening Claim Construction Brief ("Shariati Decl."), Ex. A at 4:42-47.) The equally fatal logical flaw with this argument is that it simply assumes that a sweetener is a flavoring, which is simply not true. The claim scope difference between Claim 1 and Claim 3 is immaterial since sweeteners do not fit within the scope of either claim.

### C. Sweet softeners are not a substitute for flavoring

While Sweeteners are not explicitly mentioned in the specification, the patents teach and claim the use of gelatin softeners such as Sorbitol and other polyols, many of which can be used as sweeteners. (*See* Shariati Decl., Ex. A, at 3:21-22; Defendants' Opposition, at 9:13-15.) The use of these polyols as sweeteners was well know in the prior art (*See e.g.,* Defendants' Opposition at 9:13-15; Shariati Decl. Ex. G at 90.) The inventor of the patents-in-suit however did not simply rely on the sweetening qualities of the softeners to improve palatability and explicitly disclosed and claimed the use of flavoring in addition to the disclosed softeners, even the sweet ones.

In arguing for an unsupported broadening of the term "Flavor" Defendants are attempting to drag the claims into the scope of some prior art references that identify a component of a gelatin softener as also being a sweetener, thus trying to provide the "flavoring" element that is not disclosed by the prior art. The explicit language of the claims and the specification, however contradict Defendants' arguments that using a sweetening softener is the same as adding flavor.

### D. The prosecution history distinguishes "Flavoring" from "Sweetener"

Defendants next point to statements by the inventor in the prosecution history that the prior art "does not anticipate adding flavorants *or* sweetening agents to the gelatin capsules,

1  which is a key point in all of the claims and particularly claims 4-6." (Shariati Decl. Ex. D, at 6,
2  emphasis added.)  Even on its face, this statement contradicts the Defendants' position since it
3  distinguishes between "flavorants" and "sweetening agents" using the disjunctive "or" rather than
4  lumping them together, as Defendants try to do, with the conjunctive "and."  Instead of
5  supporting the Defendants definition, the cited statement highlights the affirmatively different
6  understanding in the art between "flavorants" and "sweetening agents."

7  Looking a bit deeper, the *Stella* reference, to which the inventor was responding, also
8  recognizes two distinct taste modifiers, "flavorants" and "sweetening agents" further
9  contradicting the Defendants assertion that two are interchangeable.  Moreover, the quoted
10 response does not rely on flavorants and sweetening agents being the same to argue over the prior
11 art, but that the prior art had neither.  This is particularly evident when one considers that the
12 statement applies particularly to claims 4-6.  Claim 4, as it existed at the time this statement was
13 made, provided the list of 24 flavorings that is in issued Claim 3. (*See* Declaration of James E.
14 Glore in Support of Plaintiff Nordic Naturals, Inc.'s Reply Claim Construction Brief ("Glore
15 Decl."), Ex. C at 10; Shariati Decl., Ex. D.)   Claims 5 and 6 each required the flavoring to be
16 strawberry. (*Id.*)  Neither the statements in the file history, nor the language of the Claims 4-6,
17 lend any support to the notion that the inventor used the term "flavoring" to include sweeteners.
18 To the contrary, the cited phrase, and the prior art reference to which it responds, show that both
19 the inventor and the author of the *Stella* reference knew the difference between flavorants and
20 sweeteners and did not use the terms interchangeably.

21 **E. Defendants' extrinsic evidence contradicts their own construction**
22 1.     Defendants' improperly attempt to combine definitions from their dictionary
23 Having failed with the intrinsic evidence, the defendants next attempt to use a convoluted
24 interpretation of cherry-picked dictionary definitions to support their position.  It is telling that
25 Defendants cannot cite a single definition for "flavoring" which supports their construction, but
26 instead are forced to provide two definitions that must be twisted and turned to support their
27 argument.  Defendants begin with a general definition of "flavor," which defines the term as any
28 substance that gives a food etc. a particular taste.  Since even this definition does not mention

sweetness, Defendants make two additional leaps.  First, they point to a definition of the sense of "taste" that says it is stimulated by taste buds.  Finally, Defendants argue that since sweetness is a sensation of taste, and "flavors" stimulate the taste buds, flavors must include sweeteners.  (Defendants' Opposition, at 8, line 24.)

If, instead of this exercise, Defendants had simply checked their own dictionary's definition for "flavoring," the actual true term at issue here, they would have found that "flavoring" is defined as, "an essence, extract, etc. added to a food or drink to give it a certain taste." (Baker Decl., Ex. C, at 515.)  Similarly, the dictionary definition for flavoring cited by Plaintiff merely states that flavoring is "a substance that imparts flavor." (Shariati Decl., Ex. F, at 519.)  Despite the Defendants' lexical acrobatics,  these dictionary definitions equally support plaintiff's proffered construction and cannot override the intrinsic evidence that flavorings and sweeteners were not considered one and the same by the practitioners of the patents' art.

### 2. 21 C.F.R. 172.585 supports Plaintiff's construction

Defendants' reliance on the FDA's 21 C.F.R. 172.585 is equally misplaced.  21 C.F.R. 172.585 approves the use of sugar beet paste as a flavorant *after* the sweetener has been extracted.  Traditionally, sugar beets have been grown and harvested as a source of sugar. (*See* Glore Decl., Ex. D.)  Once the sugar was extracted, or recovered in the parlance of 21 C.F.R. 172.585, the remaining sugar beet material was typically discarded even though there are individuals who like the beet flavor.  21 C.F.R. 172.585 merely authorizes the remaining de-sweetened sugar beet material to be used as a flavor agent.  Contrary to Defendants' assertion, 21 C.F.R. 172.585 does not reflect a commingling of sweeteners and flavorants.  It regulates a process that is performed in two distinct stages, first the sweeteners are affirmatively stripped away, and only then removing of the Beet flavoring from the remaining material.  This regulation, in fact supports the Plaintiff's construction, that sweeteners and flavorants are distinct and, in the case of the sugar Beet, extracted separately.

### 3. U.S. Patent 4,428,927 Treats Flavorings and Sweeteners as Distinct

Defendants' reliance on U.S. Patent No. 4,428,927 is likewise unjustified.  The phrases in the '927 patent cited by the Defendants are "taste modifiers or flavorings" and "taste modifiers

- 4 -

**NORDIC'S REPLY CLAIM CONSTRUCTION BRIEF**
Case No. C-07-02385 PJH

1  and/or flavorings." (*See* Baker Decl., Ex. E, at 4:13-16.) In both phrases, the inventor referred to

2  "flavorings" as distinct from other "taste modifiers." The '927 patent provides a list of

3  substances identified as taste modifiers *or* flavorings. While the patent does not identify which

4  compound is which, the identification of two distinct categories of compounds supports the

5  Plaintiff's position that not all taste modifiers are considered flavorings in the art.

6      4.    The Wilkinson reference Distinguishes Sugar from Flavoring

7      The Wilkinson reference, also relied upon by Defendants, merely acknowledges that both

8  Flavorings and sugar may improve the taste of a capsule. (*See* Baker Decl., Ex. G, at 422.) The

9  reference does not teach that it considers sugar as a flavoring. It does, however, explicitly

10  indicate that ethyl vanillin and essential oils are flavorings. (*Id.*) Thus it would be proper to draw

11  the conclusion that the reference did not consider sugar, a sweetener, to be a flavoring, contrary to

12  Defendants' arguments.

13      5.    Remington distinguishes Sweeteners from Flavors

14      Finally, Defendants' reliance on Remington's *Pharmaceutical Sciences* is both improper

15  and uninstructive. Defendants' reliance is improper as they first provided notice of this reference

16  after the close of claim construction discovery, on the eve of Nordic's Opening Claim

17  Construction Brief. However, regardless of the timelines of the reference, it contradicts

18  Defendants' proposed construction and supports the Plaintiff's.

19      Defendants rely on a single table in Remington's that provides a list of components.

20  While the table is titled "Table I --Flavoring Agents," in the body of the reference, it explains

21  that "[a] listing of substances, most of them official, used as flavors, flavored vehicles, *or as*

22  *sweeteners*, is given in Table I." (Baker Decl., Ex. F, emphasis added.) Thus the text itself shows

23  that Remington's book actually considers flavors as a separate category from sweeteners.

24      Additionally, it appears from the single page produced by Defendants, that each

25  component listed on the table also has an entry in the reference describing its nature. For

26  example, the page produced starts at the top of the list and provides a separate entry for Acacia

27  Syrup, Anethois, and Anise Oil, the first three components listed in the table. Presumably,

28  Remington's would then continue on and provide entries for the components relied upon by

1  Defendants, namely the sweeteners such as "dextrose, glucose, glycerin, mannitol, saccharin,
2  sorbitol, and sucrose." (*See* Defendants' Opposition at 9). However, Defendants have failed to
3  produce those additional pages.

4  Additionally, nowhere in the cited pages of the Remington's reference is there a mention
5  softgel capsules, or the flavoring of softgel capsules. There is also no proof that one of ordinary
6  skill in the art of softgel formulation would consider this reference to be a "leading treatise" as
7  asserted by Defendants. (*Id*.) Defendants have provided no proof that it is "leading," or even well
8  known in the softgel art.

### F. Plaintiff's extrinsic evidence confirms its proffered construction without contradicting or improperly modifying the claim terms.

In contrast to their own heavy reliance on extrinsic evidence, Defendants summarily dismiss Plaintiff's citation of extrinsic evidence with conclusory statements disclaiming their value. However, Defendants provide no meaningful discussion as to why Plaintiff's extrinsic evidence is "unenlightening and ultimately improperly relied upon." (Defendants Opposition at 10.) Defendants admit, as they must, that each of the references cited by Plaintiff uses different terminology for sweeteners than for flavors. They fail to explain, however, why the weight of this evidence fails to support Plaintiff's assertion that one of skill in the art would recognize a difference between a sweetener and a flavor, and that such a person would not include sweeteners as part of the substances encompassed by a flavor.

In addition to Plaintiff's previously-cited extrinsic evidence, additional references have come to light which further support Plaintiff's position. These references were incorporated by reference into a piece of prior art cited by the U.S.P.T.O. during the prosecution of the asserted patents and may be considered intrinsic evidence as part of the file history. In each of these references, the author makes a distinction between flavors and sweeteners. For example, in discussing shell additives, the Swarbrick reference teaches, "[a]mong these are preservatives such as methyl and propyl parabens; approved color additives; opacifying agents including titanium dioxide; ethyl vanillin and other flavoring agents; and sweetening agents." (Glore Decl., Ex. A, at 272.) Likewise, the Jimerson reference discusses shell composition by listing:

1  "Additional components which may be added include:

2  1.  Preservatives – parabens

3  2.  Colorants – approved dyes and natural coloring materials

4  3.  Opacifying Agents – titanium dioxide

5  4.  Flavoring – vanillin

6  5.  Sweeteners – sugars, saccharin

7  6.  Enteric Agents - To render the shell insoluble

8  7.  Medicaments – i.e. benzocaine"

(Glore Decl., Ex. B, at 1137.)  Both of these references are part of the intrinsic record and further support that one of skill in the art at the time of application's filing would have understood that "flavoring" was separate and distinct from "sweeteners."

### III. PERCENTAGES CLAUSES

#### A. Importing limitations from the specification is improper

In their opposition, Defendants quote the *Phillips* court for the proposition that reading limitations into the claim from the written description is "one of the cardinal sins of patent law." (*Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005)(*en banc*), *cert. denied*, 546 U.S. 1170 (2006).)  Unfortunately, Defendants fail to take this lesson to heart and fall victim to this very "sin," by attempting to import limitations from of a single specific embodiment into the claims.  Defendants' attempts to justify this attempt at importing limitations from the preferred embodiment as an inherent aspect of the nature of soft gels, specifically that the components must be distributed throughout the capsule.  (Declaration of Donald R. Steele in Support of Defendants' Claim Construction Brief and Opposition To Plaintiff's Claim Construction Brief, ("Steele Decl.") at ¶9; Defendants' Opposition, at 13.) Despite making the inherency claim, the Defendants have repeatedly argued against infringement by stating that their soft gels do not practice this element of the asserted claims.  Regardless of the argument, however, there is no justification for selectively importing limitations from the preferred embodiment into the claims.

**B. Defendants improperly import implied aspects of a specific embodiment**

The core of Defendants' proposed construction for the percentages clauses is the addition of a limitation that the various claimed components must be "present throughout the gelatin capsule." (Defendants Opposition, at 12). In proposing their construction of the percentages clauses, Defendants attempt to import certain physical aspects of a specific embodiment into the claims, failing to acknowledge that other structures for the composition may exist which satisfy the claim limitations. Defendants argue that the method described in the patent would create a gelatin capsule in which the mixed-in components would be present throughout the shell. (Defendants' Opposition, at 13) While noting that the description of the method is not dispositive, Defendants nonetheless rely on the description of the method to try to import Defendants' desired limitations into the structure claims. (*Id*). Worse yet, the limitation urged by the Defendants is not even explicitly set out in the sole embodiment relied upon by Defendants. To read the "present throughout the gelatin capsule" limitation into the claims as urged by Defendants, one needs to accept on faith that the process described in the preferred embodiment of the method of manufacture always leads to a homogenous and uniform distribution of the flavoring in the softgel. The patents do not teach that, and the claim cannot be limited in that way.

**C. The Steele declaration applies the wrong standard**

Defendants' rely on the declaration of Mr. Steele as extrinsic evidence for their construction of the percentages clauses. As the Court is aware, Plaintiff has already objected to the last-minute surprise disclosure of Mr. Steele and his declaration and has moved this Court to strike the declaration. In addition to the procedural defects, the Steele Declaration has little, to no, evidentiary value mainly because Mr. Steele's opinions are based on his personal and current understanding, not the understanding of one skilled in the art when this patent was filed in 1999. (Steele Decl., ¶¶ 7-9)**.**

At the suggestion of the Court, Plaintiff has submitted with this Reply the declaration of Dr. Edmund Elder ("Elder Decl."). As can be seen from his declaration, Dr. Elder has extensive

- 8 -

**NORDIC'S REPLY CLAIM CONSTRUCTION BRIEF**
**Case No. C-07-02385 PJH**

1  experience in the science and art of formulating softgels.  Dr. Elder further provides his

2  understanding of the qualifications necessary for one of ordinary skill in the art.  Finally, Dr.

3  Elder opines on the declaration of Mr. Steele, and provides his expert opinion as to what one of

4  ordinary skill in the art at the time of the applications' filings would understand the various terms

5  to mean.

6       Specifically, Mr. Steele states in paragraph 7 of his declaration that he understands the

7  claims to require the components to be present throughout the gelatin capsule at the specified

8  percentages. (Steele Decl., at ¶ 7)  However, Dr. Elder has opined that one of ordinary skill in the

9  art would only understand the claims to require that the components be present in the capsule in

10 the proper concentration, without restriction to their distribution. (Elder Decl., at ¶¶ 9-12.)

11      Additionally, in paragraph 8 of his declaration, Mr. Steele responds to Defendants'

12 interpretation of Plaintiff's comments and examples regarding sections or layers by noting that

13 "such an interpretation is inconsistent with the requirements and nature of soft gelatin capsules.

14 (Steele Decl., at ¶ 8.) Dr Elder explains in his declaration that Mr. Steele's assertions as to the

15 "requirements and nature" of soft gels is incorrect. (Elder Decl., at ¶¶ 13-14.)

16      Finally, Mr. Steele goes on to opine that a coating applied to the exterior of a capsule is

17 not "present in" the capsule shell.  (Steele Decl., at ¶ 9)  Dr. Elder opines that the application of

18 any such coating is part of the manufacturing of the completed dosage form, and thus the coating

19 is part of the capsule. (Elder Decl., at ¶ 15.)

### D. The File Histories Support Plaintiff's Constructions

21 Defendants provide additional argument based on an overreaching interpretation of

22 statements made in the prosecution history.  Defendants argue that statements made in

23 prosecution history in the context of the specific embodiment should be binding to the patent as a

24 whole.  Specifically, Defendants cite to a statement made in Amendment A during prosecution of

25 the '231 patent that states "too little water as in Brox results in a distorted unpleasant taste,

26 probably due to uneven distribution or precipitation of flavoring materials.  Hence the preferred

27 ranges specified in the instant invention." (Defendants' Opposition, at 13, Shariati Decl, Ex. D, at

28 5).  With respect to this citation the Examiner had objected to the claims of the patent by citing

1   prior art (Brox) which discussed a gelatin capsule similar to the preferred embodiment of the '231
2   patent.  In the quoted response, the applicant only responded directly to Examiner's arguments
3   regarding Brox's lack of water, and did not make statements limiting the claims or the invention
4   beyond those stressing the requirement that water be within the ranges provided in the
5   specification and claims.  Applicant's comments regarding taste were merely conclusions drawn
6   with respect to the lack of sufficient water in the specific embodiment considered in applicant's
7   statement.
8          Defendants also cite to a statement made in Amendment B during the prosecution of the
9   '231 patent.  Defendants argue that applicants statement that "[o]verly dried shells were also
10  found to be unpalatable since the water soluble flavoring is unevenly distributed…" requires the
11  limitation that the components be "present throughout the gelatin capsule." (Defendants'
12  Opposition, at 13; Shariati Decl., Ex. E, at 7).  In the cited statement, the applicant is merely
13  commenting on the findings of the inventor while doing tests on the preferred embodiment.  The
14  applicant continued its discussion noting, "the unexpected results which were not predicted by the
15  prior art, were that a palatable fish oil capsule requires a narrow range of flavoring
16  concentrations, between about .5% and 1/5% for a wide range of natural flavorings, and the
17  requirement for using a narrow range of water content in the capsule shell, between about 6% and
18  10%.  *The prior art did not recognize the importance of these variables…*" (Shariati Decl., Ex. E,
19  at 7, emphasis in the original.)  Thus, similar to the previously discussed statement, the statement
20  in Amendment B is not a statement by applicant that the flavoring must be distributed throughout
21  the gelatin capsule, but instead was another statement by the applicant stressing the importance
22  and novelty of the ranges of concentration for the water and flavoring as claimed.  As with the
23  statement in Amendment A, the comments regarding taste were merely conclusions drawn with
24  respect to the lack of water in the specific embodiment being considered in applicant's statement.
25         Defendants' also cite to the declaration of the inventor discussing his experiments.  The
26  inventor states that "[he] also found that [the] harder capsules were also unpleasant to the taste
27  because the flavor was not evenly distributed in the capsule." (Defendants' Opposition, at 13;
28  Baker Decl., Ex. I, at 3) Again, this statement was made regarding the physical properties of the

one specific embodiment being used in the experiment. As with the other two cited statements, the inventor's statement indicates that the inventor believed that a certain percentage of water was required, not that the flavor was required to be evenly distributed throughout the gelatin capsule.

### E. Defendants mischaracterize how to test percentages

Defendants' contend that Plaintiff's construction of the percentages clauses is "vague and utterly confusing." Defendants miss the point. The legal standard is that the construction must be correct and legally supportable and make sense to one of ordinary skill in the art. (*Phillips,* 415 F.3d at 1313.) Plaintiff's proffered construction that simply requires a range of percentages to be present anywhere in the capsule is supported by the claim language and the specification. The entire discussion of testing by the Defendants is simply a red herring. It is easy enough to look at the recipe of what was added during manufacture, water being the notable exception to this due to evaporation and drying to determine the final ratios of the components.[1] By way of analogy, if you want to know how much flour was used to bake a cake, you don't check each grain of the finished confection; you simply check how much flour was added during baking. The same can be said of the icing, or the eggs, or any other component.

Defendants' construction on the other hand, requires an in-depth analysis of each square millimeter (or smaller!) of the capsule to ensure that flavoring, water, or softener is present in the proper range. Such additional restrictions are not present in the claim, and truly confuse the issue and diminish the ability of a would-be capsule maker to know whether his capsule may be infringing the Asserted Patents. Further, as explained by Dr. Elder, the dynamic nature of a softgel would make compliance with the patent, or avoidance of it, almost impossible to guarantee using the Defendants' construction. (Elder Decl., at ¶ 14). To the extent that easy testing is even a legal requirement for claim construction, and the Defendants have not cited any cases that so holds, Plaintiff's proffered construction would lead to a much more easily verifiable claim.

---

[1] However, alternative common tests exist to test the percentage of water in a softgel capsule.

**F.  "About" must have meaning**

Defendants' spend a significant amount of effort trying to erase the term "about" from the claims.  While Defendants have shown they are aware of the doctrine of claim differentiation when it suits their purpose [2], they completely ignore the doctrine when proposing a construction of the percentages phrases that completely writes out the term "about" from the claim.  Specifically, not all of the percentages clauses use the term "about."  For example, Claim 4 of the '879 patent provides for absolute percentages.  Defendants dismiss the doctrine of claim differentiation by casually commenting that the inclusion of the word "about" was not purposeful on the part of the Plaintiff.  However, a review of the claims as originally filed in the '231 patent, shows that for all elements providing a bracketed range, the word "about" was present.  (Glore Decl., Ex. C, at 9-12.)  Additionally, Claim 28 included that "about" language with respect to flavoring and was later combined with Claim 25 to form issued Claim 1.  (Shariati Decl., Ex. E, at 1.)  Likewise, for the '879 patent, the original claims included the word "about" in every instance *except* for Claim 8 as originally filed, which is Claim 4 of the issued patent.  (Glore Decl., Ex. E, at 8-9)  Thus in all cases, the inclusion of the word "about" where present was purposeful and present from the initial filing.  The Federal Circuit in a recent 2007 case confirmed the importance of providing meaning to the term "about", noting that "[t]he use of the word "about," avoids a strict numerical boundary to the specified parameter. Its range must be interpreted in its technological and stylistic context." (*Ortho-Mcneil Pharm., Inc., v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1327 (Fed. Cir., 2007), internal citations omitted.)

Defendants further attempt to argue that Plaintiff is estopped from benefiting from its choice of claim terms due to statements made during the prosecution of the case.  However, Defendants do not provide a specific argument on this point except to raise the specter of *Festo* in connection with a vague reference to the prosecution history.  However, as noted above, the term "about" was present from the beginning of the prosecution, and remained intact through to issuance.  *Festo* requires an affirmative abandonment of scope through changes made in

---

[2] They argued for an overly expansive application of the doctrine of claim differentiation with respect to the construction of "flavoring".

prosecution. (*Festo Corp. v. Shoketsu Kinzoku Kogyo Kobushiki Co.*, 234 F.3d 558, 586 (Fed. Cir. 2000).) It is unclear why Defendants believe *Festo* applies in this situation.

In its opening brief, Plaintiff suggested "about" could be construed as meaning "within manufacturing tolerances." Defendants have taken issue with this suggestion pointing out that such language is not in the specification or file history. Defendants have again completely ignored Plaintiff's argument and concession that the language was provided as an easy-to-understand guideline. Plaintiff has maintained that the common definition of "about" may mean "approximately, nearly" (Plaintiff's Opening Brief, at 16), and Plaintiff would be satisfied with these definitions as long as the term is not construed to be absent from the claim or meaningless.

### IV. REMAINING TERMS FOR CONSTRUCTION

#### A. "Palatable" requires pleasant taste

Defendant's also wish to eviscerate one of the main goals of the patent, which was to improve compliance of people taking the fish oil, by providing a more palatable delivery mechanism, namely the flavored capsules. Defendants argue that since taste is subjective, it is improper to require a "pleasant" taste. However, there is no "subjective" limitation for the rule that every word of the claim should be given effect. *See, e.g., In re Gabapentin Patent Litig.*, 503 F.3d 1254,1263 (Fed. Cir. 2007) (holding "construction adopted by the district court gives full meaning to every word of the entire claim term"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."). Defendants even recognize that the patent specifications indicate that taste is "purely subjective." Plaintiff submits that the inclusion of the term "pleasant" reflects that subjectivity while shaping it to one of the main goals of the patent, to increase compliance through better tasting capsules. Subjective or not, the words of the claim should be given their proper effect, and in the context of this invention, palatability is an aspect of the invention and cannot simply be erased. (*See* Shariati Decl., Ex. A, 1:25-29, 1:55-58, 2:17-21.)

#### B. Plaintiff stands on Opening Brief for remainder of terms

With respect to the other terms presented for construction, Defendants have not provided any arguments requiring rebuttal and Plaintiff stands on its arguments filed with its opening brief.

- 13 -

NORDIC'S REPLY CLAIM
CONSTRUCTION BRIEF
Case No. C-07-02385 PJH

## V. CONCLUSION

For the reasons presented by Plaintiff in this Reply and in its Opening Brief, the Court should dismiss Defendants' arguments and should adopt Plaintiff's proposed constructions.

Dated: April 16, 2008

Respectfully submitted,

Jones Day

By: /S/ Behrooz Shariati

Behrooz Shariati

Counsel for Plaintiff, Nordic Naturals, Inc.

SVI-56755