Behrooz Shariati (State Bar No. 174436)
bshariati@jonesday.com
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650-739-3939
Facsimile: 650-739-3900

Attorneys for Plaintiff
NORDIC NATURALS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**NORDIC NATURALS, INC.,**

**Plaintiff,**

**v.**

**J.R. CARLSON LABORATORIES, INC. and METAGENICS, INC.,**

**Defendants.**

**Case No. C-07-02385 PJH**

**DECLARATION OF DR. EDMUND J. ELDER, JR., Ph.D., R.Ph. IN SUPPORT OF NORDIC NATURALS INC.'S REPLY CLAIM CONSTRUCTION BRIEF**

I, Edmund J. Elder, declare as follows:

1. I am over the age of eighteen, and I make this declaration of my own personal knowledge and expertise, based on my review of U.S. Patent Nos. 6,346,231 and 6,652,879, the Opening Claim Construction brief of Plaintiff Nordic Naturals Inc., the Opposition Claim Construction Brief of Defendants Metagenics Inc., and J.R. Carlson Laboratories, Inc., and the Declaration of Donald R. Steele in Support of Defendants' Claim Construction Brief and Opposition to Plaintiff's Claim Construction Brief.
2. If called as a witness, I could, and I am prepared to, competently testify as to each stated fact.
3. I currently am the Director of the Lenor Zeeh Pharmaceutical Experiment Station in the School of Pharmacy at the University of Wisconsin-Madison.
4. I received my B.S. in Pharmacy from the Medical University of South Carolina in 1985 and received my Ph.D. in Pharmaceutical Sciences from the Medical University of South Carolina in 1989.
5. I have developed an expertise in the formulation of soft gelatin capsules (softgels) through my work in the field of softgel formulations for over 19 years. I have included an abbreviated version of my CV as Exhibit A.
6. I understand that one of ordinary skill in the art is a person capable of understanding the recipes of the patent application, and capable of manufacturing a soft gelatin capsule according to those recipes. In my opinion, a person of ordinary skill in the art at the time the patents were applied for would have a Bachelor of Science degree in Pharmacy or a related applied science, or a Doctor of Pharmacy (Pharm.D.) degree, and at least three years of experience in pharmaceutical formulation development. Alternatively, the person of ordinary skill in the art would have a Master of Science degree in Pharmaceutical Sciences or a closely related applied science and at least one year of experience in pharmaceutical formulation development. Alternatively, the person of ordinary skill in the art would have a Ph.D. in the Pharmaceutical Sciences with a specialization in pharmaceutical formulation development.

7. I understand that Claim 1 of the ‘231 Patent requires water to be “present in said gelatin capsule in a concentration between about 6% and about 10%”, and further requires water soluble flavoring to be “present in a concentration between about 0.50% and about 1.50% of said gelatin capsule.”

8. I understand that Claim 1 of the ‘879 Patent requires water soluble flavoring to be “present in said flavored gelatin capsule in a concentration which is in the range between about 0.25% and about 1.5% of said flavored gelatin capsule,” and further requires water to be “present in said flavored gelatin capsule in a concentration in the range between about 6% and about 10% of said flavored gelatin capsule.”

9. I understand Claim 4 of the ‘879 requires gelatin softener to be “present in a concentration in the range between 10% and 35% of said flavored gelatin capsule.”

10. It is my opinion that one of ordinary skill in the art at the time the patents were applied for would understand the claim language recited above to require that the specified relative amounts of the components be added to the capsule during the manufacture of the gelatin capsule shell.

11. It is my further opinion that one of ordinary skill in the art at the time the patents were applied for would not interpret Claims 1-4 of the ‘231 patent and Claims 1-6 of the ‘879 patent as requiring a particular manufacturing method for adding the components, but instead would interpret the claim language as only requiring that the specified components be present as part of the completed gelatin capsule within the concentrations specified.

12. I disagree with Defendants’ arguments and Mr. Steele’s declaration that the specific components must be present throughout the gelatin capsule, and it is my opinion that one of ordinary skill in the art at the time the patents were applied for would not have interpreted the claim language as requiring any such limitation.

13. I disagree with Mr. Steele’s declaration that the “requirements and nature of soft gelatin capsules” is inconsistent with Plaintiff’s proposed construction and that the nature of soft gelatin capsules requires Defendants’ limitation that the component be present throughout the capsule.

14. The nature of a soft gelatin capsule is highly dynamic and precludes a strict requirement that certain components always remain within a specified concentration range throughout the capsule. It is my opinion that one of ordinary skill in the art at the time the patents were applied for would recognize that the dynamic nature of softgels precludes a limitation such as proposed by Defendants from being able to be reliably met in the manufacture of softgels.

15. I disagree with Mr. Steele's declaration that a flavoring applied as a coating to a capsule shell would not be considered as being "present in" the capsule shell. It is my opinion that a coating constitutes part of the finished capsule shell, and thus would be considered to be present as part of the capsule shell by one of ordinary skill in the art at the time the patents were applied for.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of April, 2008 in Madison, Wisconsin.

Dr. Edmund J. Elder, Jr., Ph.D., R.Ph.